## Commonwealth *versus* Ferrigan.

*Criminal Law.*—*Proof of* quo animo *of Defendant.*—*Character and conduct of Deceased inadmissible as excuse or justification.*—*Writ of Error in Criminal Cases when allowed.*

1. On the trial of a criminal prosecution, where the facts and circumstances offered in evidence amount to proof of a crime other than that charged, and there is ground to believe that the crime charged grew out of it, or was caused by it, such facts and circumstances may be admitted to show the *quo animo* of the accused.

2. Consequently, evidence was admissible on the part of the Commonwealth, on a trial for murder, of an adulterous intercourse between the wife of the deceased and the prisoner, continuing down to or near the time of the homicide, as tending to show a motive for the act, though independent acts of adultery, disconnected from other evidence in the case, could not have been shown.

3. It is not error to reject an inquiry as to the deportment of the deceased generally, his violence of character, or his threats toward the prisoner, or as to the deportment of the deceased, when he came from the army, toward his family, because, if proved, the bad conduct and violence of temper of the deceased would not justify the taking of his life.

4. Where it appeared, by the notes taken on the trial, that on the admission of the testimony as to the question of threats by the deceased, when offered singly, the court were divided, so that the objection of the Commonwealth's counsel fell, and the testimony was taken down, there was no error of which the prisoner could complain.

5. A writ of error will be allowed by the Supreme Court, to bring up the record of a criminal prosecution and conviction, whenever doubt is entertained as to the accuracy of the ruling of the court below in any important particular, but not otherwise.

SUR APPLICATION to Supreme Court for writ of error to the Court of Oyer and Terminer of *Philadelphia*.

At December Sessions 1862, Patrick Ferrigan and Mary Williamson were indicted jointly for the murder of Thomas Williamson.

The defendants were separately arraigned, and separately pleaded not guilty, on which plea issue was joined by the district attorney.

On the trial of Patrick Ferrigan, he was found guilty of murder in the first degree, and was sentenced accordingly.

On the 13th of February 1863, an application was made to this court for a writ of error, and copies of the indictment, notes of some portions of the evidence adduced on the trial, together with the docket entries, were furnished to this court by the counsel for the prisoner.

The case was duly considered by the court in banc, and the application for the writ refused, for the reasons contained in the following opinion of the court, which was delivered, March 9th 1863, by

THOMPSON, J.—Judging of what was offered by the Commonwealth, and admitted by the court, as stated by the learned judge

[Commonwealth v. Ferrigan.]

presiding in the Oyer and Terminer, we discover no error in it. The offer was to prove an adulterous intercourse between the wife of the deceased and the prisoner, continuing down to or near the time of the homicide. On the subject of the offer the court said, "While independent acts of adultery could not be admitted in evidence, disconnected from other evidence in the case, yet, when the district attorney offers to show that an illegal intimacy existed between the prisoner and the wife of the deceased, and they continued down to the very day of the homicide, we think the testimony is admissible, to prove the motive, on the part of the prisoner, to commit the deed." To this there was an exception by the prisoner.

The offer being sustained, the witness testified to seeing the prisoner and the wife of the deceased in bed together, on one occasion, but when does not appear by the notes of testimony presented to us. Taking it, however, as a step towards proving the offer, it was competent. I agree that a solitary instance of illicit intercourse, especially if at a considerable distance in time from the period of the homicide, would be very unreliable testimony, on the question of motive, another word to express intent, and if received at all, should only be so with great caution, and where a probability existed that it would throw light on the motive of the prisoner. Something must be necessarily left to the discretion of the judge in such a case. But a different case is presented when it is proposed to prove a continuous illegal intercourse, down to the death of the slain. We have no case in our books directly on this point, and none has been referred to by the prisoner's counsel. The rule is, however, as stated by him, with a qualification that distinct crimes unconnected with that laid in the indictment, cannot be proved against the prisoner to raise a presumption of guilt, on the ground that being depraved enough to commit one crime, he may therefore be presumed to have committed that charged in the indictment. The rule on this subject may in substance be stated to be that, where facts and circumstances amount to proof of another crime than that charged, and there is ground to believe that the crime charged grew out of it, or was in any way caused by it, such facts and circumstances may be proved to show the *quo animo* of the accused. On this subject see Whart. Crim. Law, §§ 647–49; 1 Phil. Ev. 767, 10th ed. The prior relations between the wife of the deceased and the prisoner were proved in The Commonwealth v. Richard Smith, for the murder of Captain Carson: Whart. Hom. 389. Such testimony was given, if I recollect aright, in The Commonwealth v. Mina, for the murder of Chapman, and I know it was given in the case of The Commonwealth v. Mrs. Myers and John Parker, tried for the murder of the

husband of the former, in Venango county, in 1847, in which both were convicted.

That one crime may be proved on the trial of another, especially in homicide, is expressly sanctioned by the Act of 1794, wherein it is provided that all killing "in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder in the first degree," and this provision is re-enacted in the new Penal Code of 1861. Now, here is express authority for proving a crime not laid in the indictment, for the purpose of ascertaining the guilt of that charged. Intent is not necessary to be proved or inferred in such a case; the law fixes the grade from the act. In all other cases of wilful, deliberate, and premeditated killing, the intent becomes important, and if this can be collected from the acts or deliberations of the prisoner, it is evidence. This was the object of the testimony in this case, and it was not evidence, nor admitted for any other purpose. There are many instances in the books of killing, to conceal prior crimes. Indeed, it would be difficult to detect criminals, and bring them to punishment, by any other means than by following the thread of impelling motives. Whatever may throw light on this, on trials of criminal acts, is proper for the jury.

He is a poor judge of human motives and impulses, who cannot see in such a relation as proposed to be proved here, between the deceased's wife and the prisoner, that it might lead to the perpetration of the crime charged, or who would deny that it would probably shed light on the motive for the act. History is full of such examples. When, therefore, the *quo animo* is so important an element as it is in murder under our statute, by other means than there specially enumerated, the motive is important, and may be traced to or through other and distinct crimes. We think, therefore, that there was no error in the ruling of the court on the point first considered, and that an *allocatur* on that ground would be attended with no possible beneficial results to the prisoner.

None of the other reasons assigned are at all of any weight. The questions, what was the deportment of the deceased generally as to violence of character, and what were his threats towards Ferrigan, and "what was Williamson's deportment when he came from the army towards his family," were properly overruled by the court. The bad conduct of the deceased, and his violence of temper, did not justify or excuse the prisoner in taking his life. Society had not appointed him to be his keeper and executioner. For infirmity of temper, and abuse resulting from it, the law has provided its appropriate punishment. Certain it is, that there was no evidence that we have seen to show

[Commonwealth v. Ferrigan.]

that the prisoner was impelled by any such violence to kill him in self-defence.

The testimony offered singly on the question of threats was, although objected to by the Commonwealth's counsel, *admitted* by the court. This distinctly appears by the notes of the trial exhibited to us. It was objected to, and the court being "divided, the objection fell," so say the minutes of the trial, and the testimony was taken down. There was nothing to complain of on this score.

Had there been any rational doubt of the accuracy of the ruling of the learned court in the particulars specified, we should have felt it to be our duty to have allowed the writ of error, but it would be a mockery to allow it when it could not avail the prisoner in the least. We are therefore constrained to refuse the writ of error in this case.

Motion refused.

Per CURIAM.

Concurring opinion delivered, March 19th 1863, by

LOWRIE, C. J.—The indictment and docket entries, and some notes of evidence, with an application for an allowance of a writ of error, were handed to us, and considered by us in usual form in our next consultation, and the allowance was refused, and our brother Thompson was appointed to assign our reasons for the refusal, and then the foregoing opinion, approved by us, was prepared and filed. Since then some additional papers or memoranda have been filed : but we do not see that they change the case. In regular order no question was properly raised by the papers handed to us, because none of them contained any bill of exceptions sealed by the judges below, and without this we could not have allowed the writ. But we assumed that the question was properly raised, and have decided it. The counsel for the prisoner now seems to think that he ought to have been heard, but this is not usual in such applications; for usually we allow writs of error in homicide, if we entertain any doubt about any important ruling below, and in this case we have no doubt.