## Lane *versus* The Commonwealth.

1. The Act of 31st March 1860, § 74 (Murder), makes no distinction as to the requirement on the jury to find the degree of murder, between any of the modes as defined in it.

2. It is indispensable in the trial for homicide, that the degree of the crime be ascertained and appear on the record.

3. The degree is to be ascertained by the jury when there is a trial, and by the court on confession.

4. Ascertaining the degree of murder is as essential an element of the verdict as any other fact found by it.

5. The jury have the *power* to fix a lower degree than the statute provides.

6. In a trial for murder by poison, the court below charged, "the life or death of this man is in your hands: there is no middle course, he *must* be convicted of murder in the first degree, or acquitted of everything. If your

| 59 | 371 |
|---|---|
| o197 | 78 |
| 59 | 371 |
| 198 | 61 |
| 59 | 371 |
| 205 | ³608 |
| 59 | 371 |
| 209 | ⁵469 |
| 59 | 371 |
| f212 | ⁶300 |

[Lane *v.* The Commonwealth.]

verdict is guilty of murder, you *must* state of the first degree. If not guilty you say so, and no more." *Held*, to be error.

November 4th 1868. Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, JJ. READ, J., absent.

Error to the Court of Oyer and Terminer of *Allegheny county*.

Lewis Lane was indicted for the murder of his wife, Henrietta Lane.

The indictment was tried June 17th 1868, before Sterrett, P. J., and Stowe, J.

The Commonwealth gave evidence that the deceased died by means of poison, and that it had been administered to her by the prisoner.

The jury was charged by Stowe, J., who, amongst other things, said to the jury : " The life or death of this man is in your hands. There is no middle course. If he is guilty of murder, he must be convicted of murder in the first degree or acquitted of everything. * * If your verdict is guilty of murder, you must state of the first degree; if not guilty you say so, and no more." On the 18th of June the jury returned a verdict of " guilty of murder in the first degree." The prisoner was sentenced September 12th 1868.

By virtue of a special allocatur, a writ of error was taken out October 12th 1868. The above portion of the charge was assigned for error.

*W. T. Haines*, for plaintiff in error.—The act does not mean that all *killing* by poison is murder in the first degree : Commonwealth *v.* Keeper of Prison, 2 Ashmead 235. The 74th section of the Act of March 31st 1860, Pamph. L. 401, Purd. 230, pl. 82, which is a transcript of the Act of April 22d 1794, 3 Sm. L. 187, gives the power to the jury to find the degree of murder untrammelled by any *compulsory* direction of the court. He also cited Rhodes *v.* Commonwealth, 12 Wright 396 ; State *v.* Dowd, 69 Conn. 391 ; Wharton on Homicide 361 ; 8 Ohio St. R. N. S. 634 ; Wharton's Amer. Crim. L. 926, and in notes ; Commonwealth *v.* Flanagan, 7 W. & S. 415.

*L. B. Duff*, District Attorney, for Commonwealth.

The opinion of the court was delivered, November 18th 1869, by THOMPSON, C. J.—The prisoner, Lewis Lane, was charged and tried at the June Term of the Court of Oyer and Terminer of Allegheny county, for the murder of his wife, by administering poison to her ; and the question now for our consideration is whether the court below erred in the portions of the charge to the jury excepted to and assigned for error, which are as follows :—

[Lane *v.* The Commonwealth.]

"First—The life or death of this man is in your hands; there is no middle course; he *must* be convicted of murder of the first degree, or acquitted of everything."

"If your verdict is guilty of murder, you *must* state of the first degree. If not guilty you say so, and no more."

The objection to these portions of the charge is, that they were peremptory, and took from the jury their exclusive right and duty to find the degree, in case of a conviction of murder. It was contended on argument, that in all trials for murder, by whatever means perpetrated, it is always the province and duty of the jury, if they convict, to find in their verdict the degree, and that this being the requirement of the statute, a binding instruction from the court to find a particular degree, is an infringement of the duty intrusted alone to the jury, and not to the court.

The 74th section of the Act of 31st of March 1860, which is a transcript of the provision on the same subject of the Act of 22d of April 1794, enacts that "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration of or the attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person shall be tried shall, if they find such person guilty thereof, *ascertain in their verdict,* whether it be murder of the first or second degree."

It must be admitted, we think, that the act makes no distinction as to the requirement to find the degree of murder, between any of the modes by which it may be perpetrated, as defined in the statute. In all alike the requirement applies without any exception. Even in case of a confession of the crime and submission to the court, no matter by what means it may have been perpetrated, whether by poison, lying in wait, or in an attempt to commit either of the enumerated crimes, in which intention to kill is not a material inquiry, the court must, before sentencing, examine witnesses and determine the degree. The law is imperative, and it is indispensable in the trial of a homicide, that the degree of the crime be ascertained and appear on the record. This is to be done by the jury, where there is a trial, and by the court, where there is a sentence on a confession. It is as essential an element of the verdict as any other fact to be found by it. It is this which ascertains and fixes the penalty to be attached to the crime, and hence it must appear by the record.

Tilghman, C. J., in White *v.* Commonwealth, 6 Binn. 183, speaking of the form of indictment under the Act of 22d April 1794, said, "It has not been the practice, since the passage of this law, to alter the form of indictments for murder in any respect; and it

[Lane *v.* The Commonwealth.]

plainly appears by the act itself, that it was not supposed any alteration would be made. It seems to be taken for granted that it would not always appear on the face of the indictment of what degree the murder was, because the jury are to ascertain the degree by their verdict, or, in case of confession, the court are to ascertain it by the examination of witnesses." Notwithstanding what the Chief Justice said, indictments continued to be generally framed according to common-law precedents, in which was always set forth the kind of instrument and the means of the killing. Since the passage of the Criminal Procedure Act of 31st March 1860, § 20, it is not necessary that the "manner, or the means by which the death of the deceased was caused," should be set forth, but only that it was done "feloniously, wilfully and with malice aforethought." Hence it would seem to be more than ever material that the jury be charged with the responsibility and duty of finding the degree. That it is a material fact to be found is not to be denied or doubted. The statute makes it so, and with it all our decisions accord.

But it is argued that where the facts bring the case within either of the modes of killing declared murder in the first degree, it being the *duty* of the jury to find a verdict in accordance therewith, a peremptory direction to find that degree is proper and right. To admit this would be to determine that this portion of the verdict is matter of form, and to substitute a court to do that which the law says the jury shall upon *their* oaths do. They have undoubtedly the power to fix a lower degree to the crime than the statute provides. I say they have the power, for the act gives it to them, and no court can refuse their verdict if they do so, or set it aside, unless at the instance of the defendant. We need not speculate about why it was so provided. It is sufficient that it is so written, and we cannot change, alter or depart from it. In Rhodes *v.* The Commonwealth, 12 Wright 396, this was a subject of thought and comment. Woodward, C. J., said, in the opinion of the court, "No doubt cases of murder in the first degree have been found in the second, but this must have been anticipated when the statute was framed, and has certainly been allowed under its operation; and yet it has remained on the statute book since 1794, unaltered in this regard. Possibly the very distinction of degrees was invented to relieve such jurymen's consciences as should be found more tender on the subject of capital punishment, than on their proper duties under the evidence. Many men have been convicted of murder in the second degree who, really guilty of the higher crime, would have escaped punishment altogether but for the distinction in degrees, *so carefully committed to juries by the statute.*"

For myself, I have no doubt the object of establishing degrees was to affix to the more heinous murders the highest penalty. But

[Lane v. The Commonwealth.]

as the penalty results from the degree, the responsibility and duty of fixing that was assigned to the deliberation of the jury. We need not speculate about the moving cause for this provision. It is enough that it is of the law, and its workings have been but little complained of after an experience of three-quarters of a century. We must administer it as it is, and in the spirit of the enactment, without altering or weakening it.

In Rhodes v. The Commonwealth, the theory of the prosecution was, that the murder was committed by the prisoner in perpetrating the crime of robbery, for the prosecutor's house was robbed that day. The effort was to identify him with the robbery, and the prosecution claimed a conviction so exclusively on that ground that the judge in his charge to the jury, used almost the same language which the learned judge did in this case. The language was: "If you find the defendant guilty your verdict *must* state guilty of murder in the first degree, in the manner and form as he stands indicted. If not guilty, your verdict will simply be, not guilty." The same reason was urged in justification of this instruction as was urged here, namely : that the evidence exhibited a case of robbery by the hands of the prisoner, and therefore, it must be murder in the first degree if anything. For so instructing, this court felt constrained to reverse the sentence. Woodward, C. J., after noticing the change made by the statute in the common law, in respect to degrees in murder, and the duty of the jury under the statute to find the degree, said: "Yet the judge assumed the province of the jury and ascertained the degree in this instance, though this was a case of conviction by trial and not by confession. Nothing less can be made out of his words, 'if you find the defendant guilty, your verdict *must* state, guilty of murder in the first degree.'" "Was that," he asks, "'leaving the degree to the jury to find?' Most clearly not. It excluded all chance of deliberation on the degree, and left to them only the question of guilty or not guilty." It is in vain to argue," he further remarks, "that the judge was more competent to fix the degree than the jury, or that the circumstances proved the crime to be murder in the first degree, if murder at all; for the statute is imperative that commits the degree to the jury. It was proper for the judge to advise them of the distinction between the degrees, to apply the evidence, and to instruct them to which of these degrees it pointed. But to tell them they *must* find the first degree was to withdraw the point from the jury and decide it himself."

It remains to inquire, in this case, whether the charge as made was peremptory, that their verdict *must* be murder in the first degree if anything. I will not analyze the charge, to prove that this was meant; for in all its parts, wherever conviction is spoken of as possible, this is indicated almost as clearly as in the

[Lane *v.* The Commonwealth.]

last paragraph.   We have also the learned judge's interpretation
of this as the position assumed by him, in his opinion on the
motion for a new trial.   The authorities he cites are to prove
this position, and in the concluding portion of it, he says, after
reviewing the facts, and the absence of evidence .to mitigate the
crime from wilful intentional poisoning, he adds : " If such is the
case, we were right, and it was our duty to tell the jury that they
*could not*, under the law and evidence in the case, render a ver-
dict of murder in the second degree."

The charge being intended to be peremptory, as claimed by
the prisoner's counsel, and thus shown, we think it impinged too
strongly on the province of the jury.   It did not leave them free
to deliberate and fix the degree.   The judge did, as was said in
the case above referred to, decide it, and not the jury.   If a ver-
dict of murder in the second degree had been rendered, it would
have been great error to have refused *it ;* and yet this would be
the legitimate consequence of a failure to observe the peremptory
direction of the judge.   It has never yet been decided in Penn-
sylvania, that a verdict of murder in the second degree might not
be given in a case of murder by poison.   That it may be given
is as unquestionable as the power of the jury is under the act to
give it, and impossible for the court to refuse it.   We have no
reference to the facts of the case in hand, as they appeared before
the jury.   We know nothing of them.   It is only with the ques-
tions of law raised that we have to deal ; and only in the particu-
lar discussed do we see anything to be found fault with ; nor are
we to be understood as finding fault with a practice which is
entirely proper, of judges freely advising juries as to the duty of
ascertaining that degree of murder towards which the facts seem
to point, always leaving them, however, free to deliberate upon,
and the duty and responsibility of finding the degree, if they
convict.

For these reasons the sentence in this case is reversed, and a
*venire de novo* is awarded.