Commonwealth *v*. Meas, Appellant.

Argued April 22, 1964. Before BELL, C. J., COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward G. Wink,* with him *R. Solomon Bear,* for appellant.

42

[REDACTED]

OPINION BY MR. JUSTICE EAGEN, July 1, 1964:

Joseph John Meas, the appellant, twenty-seven years of age, after trial, was convicted by a jury of murder in the first degree. Punishment was fixed at death. Following the denial of post trial motions and imposition of sentence in accordance with the jury's verdict, this appeal was filed.

From the evidence offered by the Commonwealth, the jury could find the following facts:

On August 8, 1962, about ten o'clock p.m., the defendant accosted Janis Chmielewski, aged fourteen years, at a drinking fountain on the Glenside Playground in the City of Reading. He choked her into unconsciousness and removed all of her clothing. Some blocks away, he took a chaise lounge[1] from a residential carport, placed the unconscious girl thereon and proceeded to wheel the lounge towards a fairway of the golf course of the Berkshire Country Club. He proceeded down Berkshire Drive through a highly populated area for several blocks, but seeing people in the area, turned off onto a dirt road which ran along the edge of the golf course and led to the Schuylkill River. In the darkness, he failed to see an abrupt turn in the roadway and fell, together with the lounge, down a steep slope or embankment running along the westerly side of the river. He then removed his own clothing, placed the unconscious girl on the mattress portion of the lounge and walked into the river pushing the mattress with him.

---

[1] As far as is known no one saw the defendant and the victim during the time they traveled from the playground to the place where the lounge was obtained.

In the meantime, the police were called by one of the individuals in the neighborhood who had seen the defendant wheeling the lounge down Berkshire Drive. When the officers arrived on the bank of the river, the defendant was observed standing out some distance in the water. He was then seen returning to the westerly bank, retrieving his clothing, and wading out again into the river. The police fired a warning shot. The defendant was next seen momentarily pausing at the spot where he had first been observed, kicking his legs up and down, and then hurrying to the opposite bank of the river and disappearing into the darkness.

A search of the river disclosed the presence of the mattress a short distance down stream. Later on, the lifeless, naked body of the victim was found face down in the water in the area of the river where the defendant had first been observed.

A medical examination and autopsy on the body disclosed: the presence of multiple lacerations, abrasions and scratches; several marks at the base of the throat indicating pressure had been applied before death in the area of the windpipe to stop respiration; discoloration around the nipples of the breast; and traces of blood underneath the fingernails. The cause of death was drowning.[2] She had not been sexually assaulted.

The defendant was taken into custody at his home within a short time. He bore scratches on his legs, arms and chest which were of recent origin.

The defense at trial was legal insanity.[3] A qualified psychiatrist testified that Meas suffered from

[2] The findings of the pathologist indicated that the heart was beating and life still present when she was submerged in the water.

[3] A commission appointed by the court before trial, under the provisions of the Mental Health Act of 1951, after hearing, found that the defendant was not then mentally ill.

44

schizophrenia and pseudo neurosis; that the illness was of long duration; that on the night in question he suffered a complete breakdown and did not appreciate the quality of his acts or know the difference between right and wrong.

Other evidence indicated the existence of prior mental illness. Shortly after graduating from high school, Meas had set fire to several buildings in his neighborhood with no plausible motive present. He had assisted the fire department in fighting these fires. After pleading guilty to arson, he was sentenced to a state penitentiary and subsequently released on parole, as of December 12, 1961. One of the conditions thereof was that he undergo psychiatric treatment. He was still under parole and treatment on the date of this unfortunate occurrence.

A study of the record leads to the conclusion that a new trial is mandatory. The instructions of the trial court to the jury were prejudicially erroneous in important respects.

The case was tried and submitted to the jury on one theory, that a felonious homicide was involved, namely, that the killing was committed in the attempt to commit a rape. While the evidence was clearly sufficient to warrant this conclusion, it was also adequate to support a finding of common law murder.

With the one theory uppermost in mind, the trial judge in several instances throughout the charge emphasized to the jury that only one of two verdicts would be warranted: guilty of murder in the first degree; or, not guilty by reason of insanity. An example of the repeated instructions in this respect, which were the final words of instruction in the charge, is as follows: "[Y]our task now is to go out, make up your minds as to whether or not this man, and as I have told you that is solely for you to say, *is guilty of murder in the first degree or not guilty by reason*

of insanity. *You should find your verdict one way or the other. . . ."* (Emphasis supplied.) A careful reading of the charge in its entirety leads to but one conclusion, that the general effect thereof was to withdraw the question of the degree of the offense from the jury's consideration, and to restrict the jury's finding to either guilty of murder in the first degree or not guilty by reason of insanity. Second degree murder was eliminated as a possible verdict. This was prejudicial error. To further indicate the purport of the charge, second degree murder was only superficially mentioned. At no time was this degree of murder clearly defined, and in no instance did the jury receive an explanation of the differentiating characteristics of murder in the first and second degree.

We have said over and over again that one of the primary duties of a trial judge is to so clarify the issues that a jury may clearly understand the questions to be resolved: *Commonwealth v. Jordan,* 407 Pa. 575, 181 A. 2d 310 (1962). Moreover, in a trial on a murder indictment, the jury has the *exclusive* right to fix the degree of guilt and may not be deprived of this right, even though the only evidence in the case establishes that the killing was committed in the perpetration of a felony: *Commonwealth v. Turner,* 367 Pa. 403, 80 A. 2d 708 (1951).

Another significant inaccuracy in the charge is also manifest. After correctly stating that the proof of the defendant's guilt must be established beyond a reasonable doubt, the court said, "Proof by the Commonwealth beyond a reasonable doubt means that the burden rests upon the Commonwealth to prove *by the fair weight* of the credible evidence in this case that the defendant is guilty as charged. . . ." (Emphasis supplied.) This was clearly erroneous. See, *Commonwealth v. Kluska,* 333 Pa. 65, 3 A. 2d 398 (1939); *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552

(1963). Nor did any further instructions of the court on the meaning of "reasonable doubt" correct the error.

It must further be noted that the trial judge completely omitted any instructions as to the standards to be applied in weighing the credibility of the witnesses at trial.

Finally, since the case must be retried, we are impelled to discuss the instructions of the court in that portion of the proceeding wherein the question of penalty was submitted to the jury.

The charge in this respect was extremely brief. The court correctly instructed the jury that the fixing of the penalty was solely its responsibility. His further remarks were limited to a reference to the defendant's prior convictions for arson and a specific statement that in fixing the penalty the jury should remember that he was a convicted felon.

The brevity of the instructions was probably influenced by our discussion in *Commonwealth v. McCoy*, 405 Pa. 23, 172 A. 2d 795 (1961). However, in that case, while limiting the scope of the evidence admissible in the proceeding as to penalty, we did not intend thereby to restrict the jury to a consideration of that evidence alone, in determining the penalty to be imposed. All of the facts established by the evidence should be carefully considered in weighing this question and the jury should so understand. That this be done is graphically demonstrated by the facts of this case.

Judgment reversed and new trial ordered.

Mr. Chief Justice BELL dissents.