Commonwealth *v.* Schwartz, Appellant.

516

Argued November 25, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James D. McCrudden,* for appellant.

*J. Bruce McKissock,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard*

*A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, December 20, 1971:

Appellant was convicted by a jury of murder in the first degree and sentenced to life imprisonment. Motions for a new trial and in arrest of judgment were dismissed by the court *en banc,* and this appeal followed.

The charge against appellant grew out of an attempted burglary and robbery at the home of a physician which resulted in the gunfire death of a Philadelphia police officer and of one Seeley, a co-felon with appellant. Although appellant was armed when he was captured at the scene of the crime, there is no claim that he was the actual killer of the police officer; rather, the Commonwealth relied on the coconspirator theory to sustain appellant's conviction under our felony-murder rule.

The defense of appellant was that although he had conspired with an accomplice, Seeley, to burglarize an empty home, appellant had not bargained for an assault on the physician and his wife, nor on any use of a gun, pressed upon him by Seeley. He testified that he protested against the plan to seize the occupants of the house, but was forced to continue in the plot by Seeley. Appellant testified that Seeley was awaiting trial on another murder charge, and was desperate for money to pay his lawyer to defend the case; that Seeley said that if he didn't get this money he would be dead, and "that I might as well be dead, too", and wasn't "going to walk away". Appellant testified he was in fear of Seeley, that he wanted to leave, but couldn't, and went along with the plan motivated entirely through fear and coercion. When the doctor appeared

and was confronted by Seeley, appellant and a third accomplice, one McIntyre, Seeley aimed a gun at the doctor's face and appellant held a gun at his back. Seeley then hit the doctor a severe blow on the head. While Seeley went to search for valuables, Schwartz guarded the victim and his wife. The wife managed to slip into another room and telephone the police. When Schwartz saw the police approaching, he ran to the stairs and warned Seeley. In the fracas which followed, Seeley shot and killed one of the police officers, and was himself killed by the return fire of other officers. Appellant then hid in an upstairs closet where he was found over an hour later.

Appellant asserts that four errors were committed by the trial judge in his charge, and that the judge also erred in excluding certain evidence. He contends that the errors were sufficiently prejudicial to require a new trial. We disagree, and affirm the judgments of the lower court.

Appellant's first contention is that the trial court erred in instructing the jury that appellant's admission of his participation in the conspiracy to commit burglary was sufficient to support a first-degree murder conviction. The trial judge charged: "Where several felons combine in the commission of a robbery or burglary and one of them kills the victim, the other felons are equally guilty of first degree murder under the co-conspirator rule that the acts of one principal which are in furtherance of the common, unlawful design are attributable to each of his co-felons. When felons enter into a conspiracy to commit robbery or burglary and one of them kills the victim, it is still first degree murder as to all the conspirators even though the death of the victim was not planned."[1]

---

[1] This charge was substantially reiterated in response to the jury's request, after it had initially retired, for additional instruc-

The essence of appellant's disagreement with this charge is that under it the jury could believe appellant's contention that he attempted to withdraw from the planned burglary and robbery before it began and only continued to participate because his life was threatened, and still find appellant guilty of first-degree murder. Stated another way, appellant contends that under the charge the jury could find that his admitted participation in the conspiracy to commit burglary was sufficient to sustain a verdict of murder under the felony-murder rule, whereas the real and only issue was whether or not appellant had actually and intentionally participated in the felony.

We believe that the quoted portion of the charge, read as a whole, was not misleading, and that it adequately served to instruct the jury that it must find that appellant participated in the felony of burglary or robbery in order to convict him of first-degree murder under the felony-murder rule. The inclusion of the word "conspiracy" in the charge did not, as appellant argues, make it impossible for the jury to evaluate appellant's defense of withdrawal from the unlawful conspiracy. Neither that word nor the reference to a co-felon as a "co-conspirator" could have led the jury to think that this related to a conspiracy that had ceased prior to commission of the substantive crime.

The appellant next contends that the trial judge erred in refusing to charge that if the jury found the slaying to be a deliberate act of appellant's co-felon and not in the furtherance of the planned felony, the jury should find the appellant not guilty. The trial judge did instruct the jury that if appellant's co-felon had committed the murder for reasons not related to

tions as to murder in the first degree and murder in the second degree.

the burglary, then appellant could not be held responsible. "It is necessary," the court said, "to show that the conduct causing death was due [sic] in furtherance of the design to commit the felony. Death must be a consequence of the felony and not merely coincidence." We think this instruction was accurate and adequate.

The third assignment of error is the refusal of a requested charge that if the jury found the appellant guilty under the felony-murder rule it could still find the appellant guilty of second-degree murder. The trial judge did define second-degree murder in his charge. The law requires no more. In *Commonwealth v. Collins*, 436 Pa. 114, 259 A. 2d 160 (1969), this Court said: "As far back as Lane v. Commonwealth, 59 Pa. 371 (1869) and as recently as Commonwealth v. Meas, 415 Pa. 41, 202 A. 2d 74 (1964), we have consistently held that not only is it not error to charge on second degree in a felony murder case but it is error not to so charge." But *Collins* does not state, as appellant would have us read it, that the trial judge must instruct the jury that they may as an act of mercy return a verdict of second degree in a felony murder situation. We are satisfied, reading the instructions in total, that the trial judge fully met his obligation of properly instructing the jury as to the possible findings of murder in both the first and second degree.

Appellant's final quarrel with the charge is that the trial judge failed clearly and adequately to charge the jury, as required by *Commonwealth v. Meas, supra*. Appellant correctly asserts that it was necessary for the jury to determine that appellant had a felonious intent before it could convict him of felony murder. He claims that the trial judge erred in failing to charge that if appellant participated in the burglary and robbery out of fear that his co-felon would take appellant's life,

then it could not be said that appellant possessed the requisite felonious intent. The trial judge charged as follows:

"You have heard the evidence from the Defendant as to his being coerced by Seely and that what he did was under compulsion.

"I charge you that the commission of a criminal act may be excused when committed under duress or compulsion, but the duress or compulsion to be recognized by the law as sufficient, must be immediate and of such nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done.

"I also say to you that one who has full opportunity to avoid the act without danger of immediate death or serious bodily harm cannot invoke the doctrine of coercion or duress. The compulsion must be continuous and without reasonable opportunity to escape. A threat of future injury is not enough; it must be immediate to constitute a defense of a criminal charge. . . .

"Do you believe from the evidence that this Defendant was participating in the burglary and/or robbery under duress or compulsion as I have defined those terms to you? Or do you believe, from the evidence, that he was not under such duress or compulsion?" This statement, while not as elaborate as appellant would have liked, was sufficient, especially when read in light of the total charge, to satisfy the clarity requirement of *Commonwealth v. Meas, supra,* and to instruct the jury relative to appellant's defense. See 10 P.L.E., Criminal Law, §42.

Finally, appellant claims error in the trial court's refusal to admit the testimony of the wife of the deceased cofelon, Seeley, evidence of Seeley's criminal record, and the testimony of appellant's parents. The testimony of Seeley's wife and the evidence of Seeley's

criminal record were offered for the purpose of establishing that Seeley's killing of the police officer was the result of Seeley's deep hatred of policemen rather than the result of a planned furtherance of the attempted burglary and robbery. Mrs. Seeley would have testified that her husband had killed another police officer in her presence, and the criminal records would have shown that he had been indicted for that crime. From this evidence the appellant intended that the jury infer that appellant's cofelon was on a planned course of extinguishing the lives of police officers.

For over one hundred years this Court has held admissible evidence of the commission of prior crimes when such evidence shows a consistency of actions amounting to a custom, habit or usage, see *Baldridge v. Matthews,* 378 Pa. 566, 570, 106 A. 2d 809 (1954), or when such evidence tends to establish the malice of, the intent or the motive for a killing, see *Commonwealth v. Coyle,* 415 Pa. 379, 203 A. 2d 782 (1964); *Commonwealth v. Ferrigan,* 44 Pa. 386 (1863). The evidence of custom, habit, or usage sanctioned by *Baldridge, supra,* must indicate sufficient regularity to make it probable that the same actions would be carried out in every instance or in most instances. To be admissible to show intent, design or motive for a killing, the evidence of prior criminal acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances. *Commonwealth v. Coyle, supra; Commonwealth v. Ferrigan, supra.* See also 1 Wigmore, *Evidence* (3d ed.), §92, p. 519 et seq.; McCormick, *Evidence* (1954), §157, p. 326 et seq. In the case at bar, it is clear that the trial judge did not abuse his discretion in excluding this evidence, see *Commonwealth v. Corbin,* 432 Pa. 551, 553, 247 A. 2d 584 (1968); there was no showing that it

was logically probable that Seeley would shoot a policeman at every opportunity or that his actions in the instant case grew out of or were caused by his action in the earlier crime, the shooting of the first police officer. Thus, the proffered evidence clearly lacked probative value and was properly excluded.

The proposed testimony of appellant's parents was offered to show the dire financial circumstances of appellant's family and thus to indicate his motivation in the commission of the burglary. In the context of this case, such evidence would have no probative value as part of the defense case. That appellant may have been so motivated could not serve as an excuse for the felonious conduct, or as proof of lack of intent to participate in the felony. There was no abuse of discretion in the exclusion of this testimony.

Judgment of sentence affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.

------

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent on the ground that the trial court improperly excluded appellant's offer of evidence seeking to establish that the killing of the police officer was not committed in the perpetration of the felony but resulted from his cofelon, Seeley's hatred of policemen generally. Appellant offered to prove this by the testimony of Seeley's wife and other evidence that Seeley had recently killed another policeman.

It is well established that for an accused to be criminally responsible for the acts of his cofelons under the felony-murder rule, "*the killing must have been done by the defendant or by an accomplice or confederate or by one acting in furtherance of the feloni-*

*ous undertaking." Commonwealth v. Redline,* 391 Pa. 486, 496, 137 A. 2d 472, 476 (1958); accord *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 228, 261 A. 2d 550, 555 (1970). The excluded evidence was material to appellant's defense seeking to establish that his cofelon killed, not "in furtherance of the felonious undertaking," but only to satisfy his inveterate hatred of policemen. In fact, the trial court charged the jury that if the killing was committed for reasons unrelated to the burglary, appellant would not be within the reach of the felony-murder rule. The court erroneously excluded appellant's evidence offered to demonstrate that the killing was not "in the furtherance of the felonious undertaking."

The majority nevertheless holds that the evidence was properly excluded because it was not "logically probable that Seeley would shoot a policeman at every opportunity or that his actions in the instant case grew out of or were caused by his action in the earlier crime. . . ."

The standard for relevancy is not "logically probable" but whether the evidence offered is "tending to prove or to disprove the matters in issue." *Commonwealth v. Jones,* 355 Pa. 594, 597, 50 A. 2d 342, 344 (1947); McCormick, Evidence §152 at 318-19 (1954); 1 Wigmore, *supra,* §§9-10 at 289-95 (3d ed. 1940). The trial court excluded appellant's evidence on a material issue which if admitted may have created a "reasonable doubt" in the minds of the jury that Seeley killed the policeman in the "furtherance of the felonious undertaking."

The majority sustains the exclusion of this evidence on the theory that the evidence of Seeley's prior crime did not "indicate sufficient regularity to make it probable that the same actions would be carried out in every instance or in most instances. . . ." I fail to see how

the rule, barring evidence of other crimes for which the accused is not presently being tried unless the other crimes are clearly relevant for reasons other than to show the accused's bad character, applies at all in this case. That rule is designed to prevent convictions on the basis of "bad character." McCormick, supra, §157 at 327; Wharton, Criminal Evidence §232 (1955). The only person who could be possibly prejudiced by this evidence, appellant's cofelon, was deceased at the time of trial. The rule was clearly inapplicable in this situation.

Accordingly, I would reverse the judgment of sentence and grant appellant a new trial.