330 A.2d 833

**COMMONWEALTH of Pennsylvania**

v.

**Frederick BURTON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 24, 1974.

Decided Oct. 16, 1974.

Rehearing Denied Feb. 4, 1975.

552

Eugene H. Clarke, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Mark Sendrow, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant was found guilty by a jury of murder in the first degree, assault and battery with intent to kill and conspiracy. Post-trial motions were denied and this appeal followed.

On August 29, 1970, at or about 8:30 p.m., Officers Harrington and Kenner of the Fairmount Park Police in Philadelphia were turning into the Cobbs Creek Guard-

house of the 93rd Police District when they saw an unidentified Negro man gesturing at them to stop. The man then fired into the face of Officer Harrington, seriously injuring his lower jaw. A gun battle ensued between Officer Kenner and the assailant. Officer Kenner was soon joined by two additional police officers and they called for additional support. Officer McConomy, who occupied a guardhouse at the 96th District Station, received the call for assistance and radioed Officer Von Colln at the Cobbs Creek Guardhouse to find out what the trouble was. Von Colln replied, "I am not sure." Just then a second call came over the radio and Officer McConomy told Von Colln he had a second assistance call. To this Von Colln replied, "Oh yeah?" Officer McConomy then heard several shots through the receiver and asked Von Colln what was happening, but he received no reply. Officer Von Colln died of gunshot wounds.

At the scene of the shooting of Officer Harrington, police arrested Hugh Sinclair Williams, who, just before the arrest, dropped a bag containing a .32 revolver, fifteen cartridges, and a fragmentation grenade.

Pasquale DiCamillo, driving in the vicinity on the night of the crime, saw a police wagon parked with a man firing from behind a corner of the wagon and another man running into the street. Mr. DiCamillo later identified the person firing the shots as Russell Shoats and identified the other man as one of the Joyner brothers. Robert Grier testified that on the evening of the murder, he was driving in the vicinity and when he stopped to let police cars through, Russell Shoats, armed with a weapon, entered his car and forced him to drive out of the area. While Mr. Grier was driving, Shoats told him that if he told the police anything, he, Shoats, would get Grier's family. Later, Detective Edward Staume, armed with a search warrant went to 432 South 56th Street and arrested Alvin Joyner. A search of Joy-

ner's home disclosed a rifle, 30-30 ammunition, 9-millimeter rounds, and two army fragmentation grenades.

On the basis of information apparently given to them by Marie Williams, wife of Hugh Sinclair Williams, police concluded that the crime was the work of a gang known as "The Revolutionaries," which included her husband, Alvin Joyner, Robert Joyner, Richard Thomas, Russell Shoats, and appellant Frederick Burton. Appellant was arrested, and after a warrant was obtained, a search of his home disclosed a number of spent cartridges, a 9-millimeter shell, a fragmentation grenade similar to those found at the murder scene and a 24″ by 20″ drawing of a police sergeant on his knees with a black militant holding a gun to his head, with the caption, "This Now."[1] Appellant was tried by a judge and jury and found guilty of murder in the first degree, assault with intent to murder, and conspiracy for his role in the conspiracy which led to the killing of Officer Von Colln. Appellant now brings this appeal, in which he raises several issues.

█ Appellant argues that the Commonwealth's evidence was insufficient to prove his guilt beyond a reasonable doubt, emphasizing that no witness saw him at the scene of the murder or at the shooting of Officer Harrington. We reject appellant's argument. As we said in *Commonwealth v. Eiland*, 450 Pa. 566, 570–571, 301 A.2d 651, 653 (1973):

"... Although more than mere association must be shown, ' "[a] conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: ..." ' *Commonwealth v. Neff*

---

1. Appellant does not contest the legality of the arrest of the search.

[407 Pa. 1, 179 A.2d 630 (1962)] . . . at 6, 179 A.2d at 632, quoting *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958).

"Moreover, a co-conspirator is not relieved of liability because he is not present at the execution of the crime. *Commonwealth v. Burdell*, 380 Pa. 43, 110 A. 2d 193 (1955). As we noted in *Commonwealth v. Thomas*, 410 Pa. 160, 165, 189 A.2d 255, 258 (1963): 'Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators and extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties (*Commonwealth v. Spardute*, 278 Pa. 37, 50, 122 A. 161).' "

To prove that appellant was a member of the "corrupt confederation" responsible for the killing of Officer Von Colln, the Commonwealth presented the testimony of Marie Williams, wife of Hugh Sinclair Williams, one of those apprehended at the scene of the crime. Mrs. Williams testified that her husband, appellant, Russell Shoats, Alvin Joyner, Robert Joyner and Richard Thomas had met in her home about once a week during the four months prior to the shooting of Officer Von Colln. At these meetings, the group, including appellant, discussed how they, in the words of Mrs. Williams, would "eliminate the 'pigs' " in order to get police pressure off the blacks. She further testified that about a week before the murder of Officer Von Colln, the group, including appellant, discussed their plans to blow up a police

station around Sixteenth (the Cobb Street Station is located at 63rd Street).

As already noted, Russell Shoats, Hugh Williams and Robert Joyner were identified as being at the scene of the murder of Officer Von Colln. In addition, as previously related, a search of appellant's home revealed spent cartridges, a 9-millimeter shell and a fragmentation grenade similar to those at the crime scene and the hand drawing depicting a policeman on his knees with a gun pointed at his head (Mrs. Williams identified a similar drawing found in her home and testified it was done either by her husband or by appellant). We believe that this combination of evidence was sufficient to prove that appellant was part of the conspiracy. See *Commonwealth v. Joseph*, 451 Pa. 440, 304 A.2d 163 (1973).

Appellant next complains of various acts committed by the district attorney, each of which, he contends, entitles him to a new trial.

■ First, he complains of the district attorney's summation to the jury. Mrs. Williams, the Commonwealth's main witness, had appeared at three preliminary hearings, involving appellant. At the first two, she invoked the Fifth Amendment on advice of counsel. At the third hearing, she was given immunity and she testified that she heard no plans on the part of appellant or his co-conspirators to blow up a police station. At trial, Mrs. Williams gave a different version, testifying that she heard appellant and his co-conspirators planning the bombing of a police station, shortly before Von Colln was murdered. At trial, she was cross-examined by defense counsel relative to the prior inconsistent version, but was questioned only briefly regarding a statement she gave police prior to appellant's preliminary hearing.

The district attorney, in his summation to the jury, argued that if the original statement given to the police were different than her trial testimony, the defense would have brought it to light. This argument was ad-

vanced in an effort to bolster Mrs. Williams' trial testimony, since the defense had pointed out the inconsistent testimony she gave at appellant's preliminary hearing, wherein she denied knowing or hearing of a conspiracy to blow up a police station.

The defense objected to this line of argument and moved for a mistrial, which was denied. The judge then gave the following cautionary instruction:

"Counsel for the defense has objected to the District Attorney's statement that the jury can infer from the fact that counsel for the defendant did not cross-examine Mrs. Williams on the statement given by her to the police prior to the preliminary hearing, that therefore her statement to the police was not in conflict with her testimony at the trial.

"The statement given by Mrs. Williams to the police is not in evidence in this trial, and there is no evidence that counsel for the defendant had a copy of that statement.

"Therefore, I instruct you to disregard and put out of your mind and pay no attention to this comment on the part of the Assistant District Attorney as to the failure of counsel for the defendant to cross-examine Mrs. Williams on this statement."

We are of the opinion that any error that was caused by the district attorney's argument was cured by the trial judge's cautionary instruction.

■ Appellant next argues that the district attorney improperly displayed certain evidence to the jury and thus prejudiced his case. During defense counsel's cross-examination of Officer Gillin, the district attorney, in front of the jury, began to handle the weapons that were introduced as Commonwealth exhibits. These included a pistol, an ammunition clip and fragmentation grenade. Defense counsel objected and requested a sidebar at which the judge reprimanded the district attorney

for his actions.  Appellant now argues that the above actions were so prejudicial that he is entitled to a new trial.  We do not agree.  The weapons had been identified and were later admitted into evidence and were, therefore, available for the jury's inspection.  See *Commonwealth v. Mika*, 317 Pa. 487, 177 A. 3 (1935).

Appellant next argues that the district attorney deprived him of his right to a public trial.  He complains that on the fifth day of the seven-day trial, when Mrs. Williams was scheduled to testify, the district attorney requested court personnel to keep appellant's wife out of the courtroom, explaining that appellant's wife had threatened Mrs. Williams.  The district attorney also ordered all members of the Black Panthers kept out of the trial while Mrs. Williams testified.  Pursuant to this request, other members of appellant's family were also accidentally excluded.  When this came to light, on the day following Mrs. Williams' testimony, appellant's counsel moved for a mistrial, which motion was denied.  While it is true, as appellant argues, that the district attorney had no authority to exclude spectators, after the trial judge was made aware of the situation, he ratified the actions of the district attorney at least insofar as appellant's wife and members of the Black Panthers were concerned.  This presumably was based upon the judge's determination that appellant's wife and the Black Panthers might cause the witness, Mrs. Williams, to change her testimony out of fear.  See *United States ex rel. Laws v. Yeager*, 448 F.2d 74 (3rd Cir. 1971), *Commonwealth v. Principatti*, 260 Pa. 587, 104 A. 53 (1918).  With regard to those members of appellant's family who had been excluded by mistake, we note that the situation was immediately corrected when it was brought to the attention of the court.  Under the circumstances, we do not believe that appellant was denied the right to a public trial.

Appellant next argues that the trial court committed prejudicial error when it allowed to go out with

the jury, during their deliberations, the drawing of a police sergeant on his knees with a black militant holding a gun to his head, and the caption "This Now." The drawing found at appellant's home was relevant as part of the chain of circumstantial evidence tending to prove appellant's part in the anti-police conspiracy which led to the murder of Officer Von Colln. It was within the trial judge's discretion to send the drawing out with the jury and under the circumstances of this case we are unable to say it was an abuse of discretion. See *Commonwealth v. Claitt*, 454 Pa. 313, 311 A.2d 922 (1973).

■ Appellant next alleges two errors in the trial court's instructions. First, he contends that the court failed to inform the jury that they could find appellant guilty of conspiracy, but find him not guilty of murder and assault and battery with intent to kill. In reading the trial judge's charge as a whole, however, we are convinced that the jury was made fully aware that appellant could be found guilty of conspiracy and yet acquitted of the substantive crimes contained in the other indictments. Cf. *Commonwealth v. Schwartz*, 445 Pa. 515, 285 A.2d 154 (1971).

■ Second, appellant argues that the trial court erred in not instructing the jury on voluntary manslaughter. However, appellant did not *request the charge*.

■ Finally, appellant argues that he was denied due process of law by the exclusion of black prospective jurors by the district attorney's use of his pre-emptory challenges. We do not agree. Appellant has failed to prove a prima facie case of racial discrimination in the instant case. While the district attorney used his preemptory challenges to exclude some black jurors, one was seated on the jury. Under these facts, appellant is not entitled to a retrial. See *Commonwealth v. Darden*, 441 Pa. 41, 271 A.2d 257 (1970).

Judgment of sentence affirmed.

**560**

MANDERINO, J., did not participate in the consideration or decision of this case.

NIX, J., filed a dissenting opinion in which ROBERTS, J., joined.

NIX, Justice (dissenting).

My dissent in this appeal arises from the belief that the trial judge committed error in his evidentiary rulings pertaining to a picture found among the appellant's possessions in his home.

Particularly in trials where the savagery of the crimes charged or malevolence exhibited in the method of their execution is likely to excite the emotions and render sober judgment difficult, the responsibility of the trial judge to be especially vigilant in his efforts to preserve an air of impartiality and objectivity is heightened. In such a situation the admission and accentuation of irrelevant, inflammatory and highly prejudicial testimony is at variance with the unbiased, objective, reflective judgment that forms the basic tenet of American jurisprudence. This is especially true in the case at bar where the evidence of guilt was far from overwhelming.

The exhibit which was admitted in this case and permitted to remain with the jury throughout their deliberations depicted a contemptuous disregard and hostility for duly constituted authority and rekindled the antagonism between the races. Coupling the subject matter of the poster, with the fact that appellant was on trial for charges that he was a member of a black revolutionary movement bent upon the irradication of all lawful authority within the community (allegedly to avenge all wrongs that have been visited upon blacks by whites), the highly inflammatory quality of the exhibit cannot seriously be questioned. For this reason also, its erroneous admission and submission to the jury when they retired for their deliberations cannot be passed over as

being harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

First, I find great difficulty in ascertaining the relevancy of the exhibit. Relevant evidence must in some degree advance the inquiry. See *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974); *Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970); *Commonwealth v. Wilson,* 431 Pa. 21, 244 A.2d 734 (1968), cert. denied, 393 U.S. 1102, 89 S.Ct. 901, 21 L. Ed.2d 794 (1969); *Commonwealth v. Eckhart,* 430 Pa. 311, 242 A.2d 271 (1968); *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968). The question is whether a reasonable man might have his assessment of the probabilities of a material proposition enhanced by the piece of evidence sought to be admitted.[1] Here, in my judgment, the introduction of this in the trial in no way aided in the resolution of the issues presented.

Reason forces me to reject the majority's unstated premise that the possession of a *single* book, poster, painting or other article reflects upon the philosophical predilection of the possessor. It would be absurd to suggest that possession of *'Mein Kampf'* indicates the owner's acceptance of Prussian superiority, or Milton's 'Paradise Lost' as his explanation for the origin of evil in the world today. While it is true the possession of books, painting, article or other materials relating to a particular subject properly indicate a more than casual interest and even possibly an adherence to a given view, no such evidence was offered in the instant case.

---

1. [. . . "the Court will of course allow to be considered only such evidence as is worth submitting to men who will judge only by the most common and practicable tests. But to a more important extent the effect is to require a generally *higher degree of probative value for all evidence to be submitted to a jury* than would be asked in ordinary reasoning. The judge, in his efforts to prevent the jury from being satisfied by matters of slight value, capable of being exaggerated by prejudice and hasty reasoning, has constantly seen fit to exclude matter which does not rise to a clearly sufficient degree of value."] Wigmore, Evidence, 3rd Ed. (1940) § 28, p. 409.

Accepting the majority's determination of the relevancy of the exhibit this is only a prima facie indication of its admissibility. The question of whether the probative value is outweighed by its inflammatory quality must still be met. *Commonwealth v. Scaramuzzino, supra; Commonwealth v. Peyton*, 360 Pa. 441, 450, 62 A.2d 37, 41 (1948). In discussing the introduction of pictures of the body of the deceased in homicide cases, this Court recently reaffirmed the basic law in this area:

" 'The proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.' . . . Such photographs will not be excluded merely because they are horrid or gruesome, . . . but the more inflammatory the photograph the greater the need to establish the essential evidentiary value." (Citations omitted). *Com. v. Scaramuzzino, supra,* 455 Pa. at 381, 317 A.2d at 226.

Further, in *Com. v. Woods*, 454 Pa. 250, 254–255, 311 A. 2d 582, 584 (1974), this Court observed:

"Even assuming the relevancy of these photographs, the resultant prejudice to the appellant far outweighed any probative value. . . . These acts, . . . [depicted in the pictures], did in themselves cast opprobium upon appellant, and allowing the photographs of the incinerated body to go to the jury could only have served to inflame their minds and prejudice against him."

Here the highly questionable probative value was far overshadowed by the resulting prejudice that was engendered against the appellant. Thus, even accepting the majority view of relevancy (which I do not) the admission of this poster was an abuse of discretion.

Finally, the error of admission was compounded beyond repair by the trial court's ruling permitting the ex-

hibit to go out with the jury during their deliberations. In discussing the practice of allowing exhibits to be taken by the jury for consideration during deliberations the authors of McCormick on Evidence, 2nd Ed. (1972) § 217 wisely observed:

"The case for allowing the jury to take with it tangibles other than writings is somewhat weaker, at least if in-court examination of the tangible by the jury has been had. As noted in an earlier section, demonstrative evidence has peculiar force which arguably does not stand in need of yet additional argumentation." p. 541

This reasoning has compelling force where, as here, the tangible possesses a highly inflammatory quality. Neither the court below nor the majority today has been able to articulate a single legitimate purpose that was served by the submission of this exhibit to the jury during their deliberations. Yet it cannot be questioned that it did serve as a constant and compelling invitation to the jurors to disregard objectivity and to give vent to their emotional responses.

I would for the reasons stated reverse the judgment of sentence and award a new trial.

ROBERTS, J., joins in this dissent.