Commonwealth ex rel. Paylor, Appellant, *v.* Cavell.

Argued November 19, 1957. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Hymen Schlesinger,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for appellee.

OPINION BY RHODES, P. J., January 21, 1958:

This is the fourth appeal to this Court by relator, Henry Paylor.[1] The matters involved are the validity of a sentence imposed in 1944, and the constitutional right to a public trial. Relator contends, as he did in his prior petitions for writ of habeas corpus, that the sentence imposed on the bill of indictment charging robbery with aggravating circumstances is illegal. See *Com. ex rel. Paylor v. Johnston,* 180 Pa. Superior Ct. 228, 230, 119 A. 2d 562, allocatur refused 180 Pa. Superior Ct. xxix, certiorari denied 351 U. S. 969, 76 S. Ct. 1035, 100 L. Ed. 1488. However, he now asserts for the first time that he was deprived of his constitutional right to a public trial.

Relator was tried and convicted in June, 1944, in the Court of Oyer and Terminer of Allegheny County, upon bills of indictment charging rape, robbery with aggravating circumstances, and assault and battery with intent to ravish. On June 13, 1944, he was sentenced by that court to the Western State Penitentiary to serve a term of not less than seven and one-half years and not more than fifteen years on the charge of rape; a term of five to ten years on the robbery charge; and a term of two and one-half to five years on the charge of aggravated assault and battery with

---

[1] See *Com. ex rel. Paylor v. Claudy,* 173 Pa. Superior Ct. 336, 98 A. 2d 468 (two appeals) ; *Com. ex rel. Paylor v. Johnston,* 180 Pa. Superior Ct. 228, 119 A. 2d 562. Relator previously petitioned the Supreme Court of Pennsylvania for a writ of habeas corpus. *Com. ex rel. Paylor v. Claudy,* 366 Pa. 282, 77 A. 2d 350.

intent to ravish. The sentences were to run consecutively in the order given. On June 15, 1944, within the term, the sentence on the charge of robbery with aggravating circumstances was changed to a term of ten to twenty years. See *Com. ex rel. Paylor v. Claudy,* 173 Pa. Superior Ct. 336, 338, 98 A. 2d 468.

The repetitious attack upon the sentence for robbery with aggravating circumstances is devoid of merit. In disposing of the last appeal of this relator in *Com. ex rel. Paylor v. Johnston,* supra, 180 Pa. Superior Ct. 228, 230, 119 A. 2d 562, 563, we stated: "And he contends that his sentence on Bill No. 2, June Sessions, 1944, charging robbery with aggravating circumstances was excessive. . . . the sentence, on the conviction of the kind of robbery defined by §705 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §4705, of from 10 to 20 years imprisonment was proper. He was not charged nor convicted of robbery as defined by §704 of the Code, 18 PS §4704, which carried with it a lesser penalty of a maximum term of imprisonment of but 10 years." The bill charging robbery with aggravating circumstances was drawn in language approved by this Court in *Com. ex rel Conrad v. Ashe,* 142 Pa. Superior Ct. 254, 256, 15 A. 2d 926; it clearly indicates that it charges the more aggravated crime. The trial court had the power and authority to reconsider and change the sentence within the term. *Com. ex rel. Wallace v. Burke,* 158 Pa. Superior Ct. 612, 45 A. 2d 871. There is no ground for relator's complaint that the sentence was increased from the maximum which could have been imposed under an indictment charging robbery to the maximum which can be imposed under an indictment charging robbery with aggravating circumstances. The indictment upon which relator was tried and convicted charged the more serious crime and sustains the sentence finally

imposed by the court within the same term. Moreover, the sufficiency of the evidence to sustain a conviction is not a proper matter for habeas corpus. *Com. ex rel. Marelia v. Burke,* 366 Pa. 124, 126, 75 A. 2d 593.

We turn therefore to the constitutional question in this proceeding[2] raised by relator for the first time. It appears that the general public was excluded from his trial in the Court of Oyer and Terminer of Allegheny County in 1944. After the Commonwealth opened its case to the jury the trial judge ordered the court room cleared except for witnesses, officers, and persons admitted at the request of counsel. The trial judge stated: "Members of the Jury, by agreement of counsel for the defendant and counsel for the Commonwealth and with the consent of the Court, the courtroom will be cleared of all but witnesses and officers and nobody will be admitted to the courtroom except at the request of counsel."

The Constitution of Pennsylvania guarantees an accused a public trial. Article I, §9, provides: "In all criminal prosecutions the accused hath a right . . ., in prosecutions by indictment or information, [to] a speedy public trial by an impartial jury of the vicinage; . . ."[3] Unquestionably relator was entitled to a public trial. If relator were deprived of the right, it would

---

[2] A hearing on the petition and answers was held in the Court of Common Pleas of Allegheny County before President Judge Mc-NAUGHER who, in discharging the rule to show cause and dismissing relator's petition, said: "The trial of the petitioner's case was in 1944, thirteen years ago, and this question has never been raised before, either at the trial or in his numerous habeas corpus petitions and other proceedings. It is evident that he not only acquiesced in the exclusion of the public but has never until now felt that he was in any way prejudiced thereby. No right of his was violated."

[3] See, also, Article I, §11, Pennsylvania Constitution: "All courts shall be open; . . ."

be a violation of the Pennsylvania Constitution, and it would probably be a violation of the procedural due process clause of the 14th Amendment to the Constitution of the United States. See *Re Oliver*, 333 U. S. 257, 260, 261, 68 S. Ct. 499, 92 L. Ed. 682, 687, 688. See, also, Sixth Amendment to the Constitution of the United States. The precise question in this case is whether relator was deprived of his constitutional right when the trial judge, with the agreement of his counsel, excluded the general public from his trial. A proper disposition of this issue requires a consideration of the origin of this constitutional protection and the nature of the constitutional guarantee. The Supreme Court of the United States had occasion to thoroughly discuss the nature and historical background of the right to a public trial in *Re Oliver*, supra, 333 U. S. 257, 68 S. Ct. 499, 92 L. Ed. 682. See, also, *Com. v. Trinkle*, 279 Pa. 564, 568, 124 A. 191; *People v. Jelke*, 308 N. Y. 56, 123 N. E. 2d 769. The origin of the guarantee is not clear. "The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the lettre de cachet. All of these institutions obviously symbolized a menace to liberty." *Re Oliver*, supra, 333 U. S. 257, 268, 269, 68 S. Ct. 499, 92 L. Ed. 682, 691, 692. Public trials became a part of our legal system at the inception of the Colony. William Penn's Code of Laws of 1682, in the Frame of the Government, provided: "Fifth. That all courts shall be open, and justice shall neither be sold, denied or delayed."[4] The Pennsylvania Constitution of 1776

---

[4] Duke of Yorke's Book of Laws. (Compiled and published under the direction of the Secretary of the Commonwealth, 1879, p. 100.)

was the first to include the guarantee to an accused of the right to a public trial. "The provisions of the Constitution were no doubt incorporated into that document because of the abuse in early times of an accused's right to a fair trial. This was at a time when a defendant was subjected to a strictly private trial, or star-chamber proceeding, convicted on statements not deserving the name of evidence, ofttimes through the caprice of the ruling monarch. It was determined, when our Constitution was written, this abuse should not be present in our system of jurisprudence. It was thought the presence of the public generally would constrain a court, otherwise predisposed, to accord the witness (sic) a fair trial. Convictions by secret trials were therefore abolished. Public trials, with public records, were introduced, and our Constitution perpetuates this practice; . . ." *Com. v. Trinkle,* supra, 279 Pa. 564, 568, 124 A. 191, 192. But the right is not without limitation: ". . . it must not be carried to an illogical end, requiring unreasonable or impossible things; nor must it be used as an instrument to permit crime to go unpunished." *Com. v. Trinkle,* supra, 279 Pa. 564, 568, 124 A. 191, 192. A portion of the public may be excluded to prevent overcrowding; to maintain proper decorum; or where special circumstances warrant, such as the exclusion of youthful spectators in a case involving scandalous or indecent matters which might be demoralizing to immature minds. *United States v. Kobli,* 3 Cir., 172 F. 2d 919, 922, 923; *Com. v. Trinkle,* supra, 279 Pa. 564, 568, 124 A. 191. See, also, *Com. v. Principatti,* 260 Pa. 587, 598, 104 A. 53. The exact extent of the right is not capable of delineation. At the very least an accused is entitled to have his friends, relatives, and counsel present; and "No court has gone so far as affirmatively to exclude the press." See *Re Oliver.*

supra, 333 U. S. 257, 272, 68 S. Ct. 499, 92 L. Ed. 682, 693, footnote 29. But, see *United Press Associations v. Valente,* 308 N.Y. 71, 123 N.E. 2d 777.

May an accused effectively waive the right to the presence of the general public at his trial? The right to a public trial as it relates to an accused is a basic right; but constitutional rights and privileges in favor of an accused may be waived. *Lavery v. Commonwealth,* 101 Pa. 560, 564, 565. For example, he may waive the right to a jury trial (*Patton v. United States,* 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854; *Com. v. Kramer,* 146 Pa. Superior Ct. 91, 101, 22 A. 2d 46) ; and in cases other than capital, he may waive the right to be tried by twelve jurors (*Com. v. Petrillo,* 340 Pa. 33, 43, 16 A. 2d 50; *Com. ex rel. Ross v. Egan,* 281 Pa. 251, 126 A. 488). An accused may waive the right to counsel (*Adams v. United States,* 317 U.S. 269, 275, 63 S. Ct. 236, 87 L. Ed. 268, 273) ; the right to meet witnesses face to face (*Com. v. Petrillo,* supra, 340 Pa. 33, 44, 16 A. 2d 50) ; the right, in a noncapital case, to be present at every stage of the trial (*Com. ex rel. Hancock v. Maroney,* 177 Pa. Superior Ct. 133, 136, 110 A. 2d 923) ; the right against self-incrimination (*Com. v. Bartell,* 184 Pa. Superior Ct. 528, 544, 136 A. 2d 166) ; and the right to a bill of indictment by a grand jury (*Com. ex rel. v. Francies,* 250 Pa. 496, 95 A. 527). In the light of these decisions we perceive no convincing reason why an accused may not also waive the right to a public trial. 14 Am. Jur., Criminal Law, §143, p. 869. It would seem to be no more basic to an accused than other constitutional rights which admittedly may be waived. In *United States v. Sorrentino,* 3 Cir., 175 F. 2d 721, 723,[5] certiorari denied

---

[5] Cited and approved in *United Press Associations v. Valente,* 308 N. Y. 71, 123 N. E. 2d 777, 780, 781.

338 U. S. 868, 70 S. Ct. 143, 94 L. Ed. 532, it was said: "To deny the right of waiver in such a situation would be 'to convert a privilege into an imperative requirement' to the disadvantage of the accused. We think that the same considerations apply to the right to a public trial and that a defendant may waive that privilege also." Referring to the right of counsel the Supreme Court of the United States, in *Moore v. Michigan,* 355 U. S. 155, 161, 78 S. Ct. 191, 195, 2 L. Ed. 2d 167, 172, recently said: "The constitutional right, of course, does not justify forcing counsel upon an accused who wants none."

It is argued on behalf of relator that the right to a public trial is too fundamental to be waived because the public has an interest in the trial of criminal cases. In a broad sense the right to a public trial is a right of the public. *United States v. Sorrentino,* supra, 3 Cir., 175 F. 2d 721, 722, 723. See footnote 24, *Re Oliver,* supra, 333 U. S. 257, 270, 68 S. Ct. 499, 92 L. Ed. 682, 692. "While . . . the right thus accorded to members of the public to be present at a criminal trial as mere spectators may not be wholly logical it has been imbedded in our Constitution as an important safeguard not only to the accused but to the public generally."[6] *United States v. Kobli,* supra, 3 Cir., 172 F. 2d 919, 924. However, any interest the public may have is separate and distinct from that of the

---

[6] It may also be said: "'. . . it is one of the essential qualities of a Court of Justice that its proceedings should be public, and that all parties who may be desirous of hearing what is going on, if there be room in the place for that purpose,—provided they do not interrupt the proceedings, and provided there is no specific reason why they should be removed,—have a right to be present for the purpose of hearing what is going on.'" *United States v. Kobli,* 3 Cir., 172 F. 2d 919, 924, quoting *Daubney v. Cooper,* 1829, 10 B. & C. 237, 240, 109 Eng. Re. 438, 440.

accused, and it is not indicative of any public policy against a waiver of the right by a defendant. See *Com. v. Kramer*, supra, 146 Pa. Superior Ct. 91, 95, 22 A. 2d 46; *United States v. Sorrentino*, supra, 3 Cir., 175 F. 2d 721, 722. Our independent research has disclosed that in *Com. v. Hall*, 291 Pa. 341, 354, 140 A. 626, it was held that a waiver of jury trial could not effectively confer jurisdiction upon a court to try a defendant without a jury in the absence of a legislative declaration of a change in the policy favoring jury trials. A defendant by consent may not confer jurisdiction upon a court. *Com. ex rel. v. Francies*, supra, 250 Pa. 496, 502, 95 A. 527; *Lavery v. Commonwealth*, supra, 101 Pa. 560, 565. But the jurisdiction of the court to try relator is not here involved. The court had jurisdiction over relator from the beginning of the trial. When the general public was excluded with relator's consent the tribunal then trying relator did not change. Relator, the Commonwealth, and the court merely consented to a limitation on the persons who should thereafter attend the trial; relator specifically had the continuing right to have the public or any other person readmitted at any time. The limited exclusion did not deprive the court of jurisdiction ab initio or preclude its power to proceed. In fact, if any member of the public had sought readmission to the trial, it may be asked whether he could or would have been refused. However, that is not the situation before us. Relator's trial certainly was not the secret trial of the type which the constitutional guarantee proscribes. This is especially true in view of relator's consent and his right to have the public readmitted. Under the circumstances, the relator may not now raise the constitutional right as it may apply to others, such as members of the general public. See *Com. v. Paul*, 177 Pa. Superior Ct. 289,

293, 111 A. 2d 374. The requirement of a public trial is for the benefit of the accused; relator was not the victim of any unjust prosecution as the result of the limited exclusion of the general public at his trial to which there was conclusive acquiescence. It was never intended that the constitutional provision should be used merely to circumvent the administration of criminal justice.

It is also contended that a waiver of the right could not be made on relator's behalf by his court-appointed counsel. Counsel, whether court-appointed or employed by relator, was in charge of relator's defense and had authority to act in relator's behalf in all matters connected with the trial. And this was a proper matter on which counsel could act for the defendant. There is nothing to indicate that relator was not consulted by his counsel in the matter or that relator voiced his objection to the action of counsel. The presumption is that the trial of relator fourteen years ago was regular and lawful, and that he was afforded his constitutional rights. *Com. ex rel. Popovich v. Claudy,* 170 Pa. Superior Ct. 482, 485, 87 A. 2d 489. It is also presumed that counsel acted by authority of relator. As said in *Miller v. Preston,* 154 Pa. 63, 64, 25 A. 1041: "He is an officer of the court, and what he does in the course of his business is presumed to be by authority of his client." This presumption is strengthened by relator's acquiescence in the proceeding, as the action was taken in his presence during the trial. *Rarick v. McManomon,* 17 Pa. Superior Ct. 154, 157. The authority of counsel duly appearing for a defendant in a criminal case is the same generally whether he is retained by a defendant or whether he is properly appointed by the court.

It may be, as argued by present counsel for relator, that a defendant or his counsel does not waive the

right to a public trial by failing to object to the exclusion of the public, but that question is not before us. However, an express consent materially differs from a mere failure to object. See *Patton v. United States*, 281 U. S. 276, 293, 50 S. Ct. 253, 74 L. Ed. 854, 860, 861.

Again we say that relator suffered no denial of due process in his trial in 1944.

The order of the court below is affirmed.