Commonwealth *v.* Waiters, Appellant.

84

Submitted December 2, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James J. Powell* and *Robert T. Gownley, Jr.,* Assistant, Public Defenders, for appellant.

*Ernest D. Preate, Jr.,* Assistant District Attorney, and *Paul R. Mazzoni,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 31, 1975:

Appellant was found guilty by a jury on three counts of possessing a controlled substance, specifically heroin, with the intent to deliver in violation of The Controlled Substance, Drug, Device and Cosmetic Act.[1] On appeal it is argued by appellant that he was prejudiced by the excessive use of leading questions by the prosecutor and that the lower court erred in failing to clear the courtroom of persons not connected with the trial when appellant was questioned on his role in informing the police of persons selling drugs. After a review of the record and the law, we find both contentions to be without substance and affirm the judgment of the lower court.

Although a detailed history of the facts of this case is unnecessary for the discussion of the issues involved, a short summary thereof would be helpful. The Commonwealth's evidence established that on December 5, 1972, in the area of Jimmy's Recreation Hall, a business owned and operated by appellant and his brother, in Scranton, Pennsylvania, appellant approached an undercover agent of the Pennsylvania Bureau of Drug Control and asked the agent whether he wished to purchase drugs. Shortly thereafter a sale of heroin took place for $20.00. On December 22, 1972, the undercover agent entered appellant's place of business and offered to purchase an additional amount of heroin. Appellant produced three glassine bags of heroin and the agent paid him the sum of $25.00. Again on January 2, 1973, the same agent at-

---

1. Act of April 14, 1972, P.L. 233, No. 64, §§1 *et seq.* 35 P.S. §§780-101 *et seq.* (Supp. 1974-75).

tempted another purchase but was told by appellant to return the next day. The agent returned to appellant's business location on January 3, 1973, and purchased from appellant several packages of "snorting heroin" for $50.00. The agent identified appellant as the seller of the drugs on all three occasions and chemical analysis disclosed that the substance sold each time was heroin.

Appellant took the witness stand and denied making any of the alleged sales of drugs to the agent and claimed that he was out of town during part of the period of the sales. He further testified as to his reputation in the community as a concerned citizen and stated that he had informed the police at times of the presence of drug pushers in the neighborhood. At the conclusion of the trial the jury found appellant guilty on all counts. After denial of his post-verdict motions and imposition of a 2-4 year sentence of imprisonment, appellant took the present appeal.

The first issue argued by appellant is whether the repeated use of leading questions by the prosecutor deprived appellant of a fair trial. A review of the record discloses that several leading questions were propounded by the prosecutor. However, the court below sustained appellant's objections to such questions whenever they were made, and appellant does not contend that the trial court abused its discretion in that respect. Nevertheless, appellant did on one occasion demand a mistrial as a result of a leading question by the prosecutor. This was denied by the court below.

We agree with the lower court that the use of leading questions did not warrant a mistrial for the following reasons: First, the lower court found as a fact that there was no "bad motive" or any "attempt to prejudice" the appellant by the prosecutor; second, a review of the testimony discloses that counsel for both parties continuously used leading questions with and without objections from the other side; and third, the rule on lead-

ing questions is to be *"liberally construed* in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness." *Commonwealth v. Gurreri,* 197 Pa. Superior Ct. 329, 332, 178 A.2d 808, 809 (1962), *quoting Commonwealth v. Deitrick,* 221 Pa. 7, 15-16, 70 A. 275, 278 (1908) (emphasis added).

We will next consider appellant's final allegation of error which is whether the lower court erred by failing to empty the courtroom of those not connected with the trial when appellant was questioned as to information he gave the police on drug pushers. To place this issue in the proper perspective we first must summarize the surrounding facts. After the Commonwealth presented its evidence, appellant took the stand and testified as to his reputation in the community. On direct examination he told the jury that he organized activities for youths and attempted to eliminate the drug traffic in the neighborhood.[2] He claimed to have talked about the drug trade to the police, including the Captain of Detectives and other public persons, but received no response. He even attempted to become a city police officer because he felt that he was doing the work of the police but not getting paid for it. Appellant testified that on one occasion the same undercover agent attempted to purchase drugs from him but he told the agent that he had no drugs for sale.

On cross-examination the Commonwealth challenged appellant's testimony. Appellant was questioned whether he knew of persons who trafficked in drugs and whether he reported them to the police. At this point, defense counsel requested a side bar conference. Counsel for appellant asked the court to clear the courtroom of all

---

2. Although it was improper to prove reputation by evidence of specific acts, no objection was made by the Commonwealth to this testimony nor was there any argument of this issue on appeal. *Commonwealth v. Jones,* 280 Pa. 368, 124 A. 486 (1924).

persons not connected with the trial so that appellant could testify as to information divulged to the police without placing his life in jeopardy. However, the court was of the opinion that it was unnecessary to inquire into the names of those persons of whom appellant had informed the police because the prosecutor's question only asked whether appellant had in fact reported persons to the police, not who those persons were. Nonetheless, defense counsel continued to argue that there was the possibility that the names would be revealed in the answer of appellant and again requested the court to clear the courtroom. The court replied: "I can't make this an in camera proceeding under the circumstances. I don't know of any authority to do so." Defense counsel responded: "I don't know any authority except justice requires that it [the question regarding information on drug sellers] should be answered—" A few moments later the trial judge stated: "Perhaps it would be better if we limited his [appellant's] answer to the fact he did, in fact, report those [persons] to the State Police, and, maybe you [defense counsel] might be able to establish with the State Police Officer that he [appellant] did, in fact, report it to the State Police." The court then directed the prosecutor to ask appellant whether he reported such things and if he answered yes, then the prosecutor was to follow up the reports by calling the state police officer who allegedly received the information from appellant. This advice was followed by the prosecutor after the side bar conference ended. Appellant was not asked to name the persons who were reported to the police, but only whether he did inform the police of specific incidents of drug sales. Appellant testified that he made the reports to Detective Jimmy Hart and Trooper Carlson of the state police. A few more questions were asked regarding the date of the reports and then the questioning regarding the reports terminated.

Later during the trial, Trooper Carlson took the

witness stand and testified that he did receive reports on drug sellers from an anonymous informant to whom he gave the code name "Red." Further testimony from the trooper revealed that at the time he arrested appellant on the charges involved in the present case, appellant turned to the trooper and stated: "I am the fellow that was giving you information by the name of 'Red'." This testimony substantially bolstered appellant's claim of being a concerned citizen and an enemy of the drug trade.

Detective Hart then testified that he never received any reports on drug sales from anyone by the name of James Waiters (appellant). However, on cross-examination the detective admitted that he had received information from an anonymous individual who may have been appellant.

Appellant argues that the lower court erred by failing to clear the courtroom of spectators so that appellant without fear could testify as to those persons he had reported to the police as drug sellers. For authority, appellant principally relies on *Commonwealth v. Principatti*, 260 Pa. 587, 104 A. 53 (1918). In *Principatti*, a murder case, a witness appeared at trial to testify that he had been told that the deceased, a member of a secret Italian organization, had been sent to kill the defendant. The witness, being an Italian and fearing for his life, refused to testify unless the trial judge cleared the courtroom of persons of Italian descent. The lower court refused being of the opinion that it did not have the power to grant the request. The Supreme Court reversed holding that "[a] request of this character is within the discretion of the trial judge, and had the court below, in the exercise of its discretion, refused the one at bar, we would be loath to characterize such a ruling as reversible error; but, clearly, in the present instance the judge was wrong in ruling that he had no power to grant the application." *Id.* at 598, 104 A. at 58. *See also Commonwealth ex rel. Paylor v. Cavell*, 185 Pa. Superior Ct. 176, 138 A.2d 246,

*allocatur refused,* 185 Pa. Superior Ct. *xxvii, cert. denied,* 358 U.S. 854 (1958) (holding that the right to a public trial may be waived by an accused.)

Although *Principatti* and the case before us are factually distinguishable (in *Principatti* the witness refused to testify until the courtroom was cleared while in the present case the witness expressed no such reluctance), we believe that the present case is basically consistent with the holding in *Principatti.* The lower court's opinion discloses that the discussion at the side bar conference "reflects the court's concern for authority, but also its belief that the requested action was unnecessary under the circumstances." Opinion of lower court at 8. Our review of the record satisfies us that the trial judge exercised the discretion required by *Principatti.* He did not refuse the application because he felt he lacked authority, but after talking to counsel the judge was able to reach an arrangement where it was unnecessary to clear the courtroom.

Even if the statements of the trial judge are interpreted to mean that he was of the opinion that he had no power to clear the courtroom regardless of the circumstances of the case (a result we do not find to be supported by the record), we would still hold that such an error on his part would be harmless at most. The record demonstrates that appellant was never asked the question: who were the persons that appellant reported to the police as drug sellers? Therefore, appellant's responses were not stifled by the presence of the public at his trial. The record also reveals that appellant's reputation as a concerned citizen who assisted the police in their detection of drug sellers was strengthened by the testimony of Trooper Carlson who confirmed the fact that he had received certain information from a "Red" and that appellant knew of "Red" and claimed to be that person at the time of his arrest. The names of the persons appellant informed upon were not necessary under these cir-

cumstances to support appellant's testimony. In view of these facts and the positive identification of appellant as the seller we are convinced that if there was any error, it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 (1967) ; *Commonwealth v. Williams,* 230 Pa. Superior Ct. 72, 327 A.2d 367 (1974).

Judgment affirmed.

————

CONCURRING OPINION BY SPAETH, J.:

I do not understand how the majority can quote the trial judge's statement, "I don't know of any authority to do so [to clear the courtroom]," and then say that the judge "did not refuse the application [to clear the courtroom] because he felt he lacked authority." Nor do I think appellant should be blamed because his attorney "never asked . . . who were the persons that appellant reported to the police as drug sellers." To be sure, the attorney never did; but only because the judge had refused his application to clear the courtroom.

I offer these comments because I fear that sometimes we find "waiver" and "harmless error" too easily. I am sympathetic with the difficulties encountered by trial judges, and recognize our consequent responsibility to defer to the exercise of their discretion. In far and away the greater number of instances, that discretion is wisely exercised. When, however, a judge says he is doing something for a particular reason, I think we should take him at his word. In the present case I concur only because appellant's attorney ended by going along with the judge's suggestion. Had he stood his ground, by, for example, citing *Principatti,* and then moving for a mistrial, I should have voted to reverse.

HOFFMAN, J., joins in this opinion.