456 A.2d 580

Re Petition of the DAILY ITEM

**Appeal of DAILY ITEM, William C. Saylor.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1981.

Filed Feb. 11, 1983.

Leonard R. Apfelbaum, Sunbury, for appellant.

Charles J. Ax, Jr., Middleburg, for participating party.

Before BROSKY, McEWEN and BECK, JJ.

BROSKY, Judge:

On December 20, 1979, a preliminary hearing was held before a District Justice to determine whether Robert E.

Dock should be tried on criminal homicide charges. The District Justice denied the public access to the hearing and refused to provide the press with a copy of the hearing transcript. Appellant then filed a Petition with the lower court seeking access to a record of the proceedings. The court upheld the District Justice's exclusion of the public from the hearing and denial of transcript.

During the oral arguments presented to us, we were informed that the trial in this case has already been concluded. Normally, we would treat appellant's appeal as moot and dismiss it. However, we may decide cases with substantial questions, otherwise moot, which are capable of repetition unless settled. See *McKeesport Area School District v. Collins,* 55 Pa.Cmwlth. 548, 423 A.2d 1112 (1980), *Colonial Gardens Nursing Home, Inc. v. Bachman,* 473 Pa. 56, 59, 373 A.2d 748, 750 (1977). Finding this situation to be one likely to recur, we will address the merits of the appeal. We reverse.

The lower court explained its denial of the petition in an opinion which concluded as follows:

> In these circumstances, it is clear that the hearing before the District Justice to which petitioner sought admission and for which it requests a transcript was in part a preliminary or prefatory stage of the criminal justice proceedings to which it had no constitutional guarantee of admission, thus no constitutional right to the transcript. (Page 10 of Opinion.)

We are unable to state, as the lower court has, that the public has no right of access to preliminary proceedings.

In *Gannett Company, Inc. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), the Supreme Court was faced with the question of whether members of the public have an independent constitutional right to insist upon access to a pretrial judicial proceeding. The court held that no such right is given by the Sixth or Fourteenth Amendments, but reserved decision as to whether it is found in the First Amendment. The Court did say, however, that even if such a right does exist, there are circumstances in which it

is outweighed by a defendant's right to a fair trial. The court found the closure of the courtroom by the trial court to be permissible because

> ... the closure decision was based "on an assessment of the competing societal interests involved ... rather than on any determination that First Amendment freedoms were not implicated." Id. at 393, 99 S.Ct. at 2912.[1]

In contrast, the trial court in the present case held that First Amendment freedoms were not implicated because a preliminary hearing is not a trial to which the right of access attaches.

Similarly, appellee argues that the Pennsylvania Constitution's provision that "all courts shall be open" found in Art. 1 § 11, does not apply to this case because the District Justice proceeding is not a court proceeding. We do not agree. When the proceedings before a District Justice are criminal in nature, as was this hearing, they are treated as court proceedings. See 18 Pa.C.S.A. § 103.[2]

In *Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318 (1980), the Pennsylvania Supreme Court held that closure of a pretrial proceeding may not be ordered where some other procedural device can fully protect the defendant's right to a fair trial. In *Hayes*, the proceeding in question was a pretrial suppression hearing scheduled to be held immediately prior to trial.

In reaching its decision, the court discussed the *Gannett* case at great length concluding that while *Gannett* does not decide whether there is a constitutionally based right of

1. But see Chief Justice Burger's and Justice Rehnquist's separate concurring opinions in which they express the view that no public right of access exists as to pretrial proceedings.

2. In *Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318 (1980), our Supreme Court interpreted this provision as providing no greater right of access to the public than is found in the public trial provisions of our state and Federal Constitutions. The Court did conclude its constitutional discussion in that case by finding that closure of the pretrial suppression hearing may be limited where there is an effective and efficient alternative means to assure the accused's fair trial rights. Id., 489 Pa. at 427, 414 A.2d at 322.

access to pretrial proceedings, that decision does provide justification for limiting the use of closure. The Court wrote:

> It is thus readily apparent that where a less restrictive alternative is available for assuring the fair trial guarantee and the use of that alternative does not unduly burden the expeditious disposition of the cause, all of the views expressed by the members of the *Gannett* Court would have no serious disagreement with a requirement that the alternative procedure should be opted for in preference to closure. Id., 489 Pa. at 426, 414 A.2d at 321.

Our Supreme Court then found that under the facts of the *Hayes* case, a less restrictive alternative was available. All parties had agreed that since the suppression hearing was to immediately precede the trial, sequestration of jurors would protect the defendant's right to a fair trial.

Unlike the *Hayes* court, we cannot determine on the record before us, whether closure was justified. What we have determined, however, is that the trial court erred in failing to consider the public's right of access to this proceeding.

The *Hayes* court indicated that whether that right is of constitutional dimension was not critical to its decision. See *Hayes*, supra, 489 Pa. at 425, 414 A.2d at 321. In fact, the court did not state whether the right it enforced was based on either the Federal or Pennsylvania Constitution. It did, though, find such a right as to pretrial proceedings.

Certainly, the facts of the present appeal are different than those of *Hayes*. The preliminary hearing, held to determine whether the defendant should be tried at all, is not held immediately before trial. Sequestration of jurors would not provide an effective alternative means. It may well be that there was no other way to protect the defendant's right to a fair trial, but the question should have been considered.

Order reversed.

McEWEN, J. concurred in the result.

BECK, J. files a concurring opinion.

BECK, Judge, concurring:

This case originated when the press was excluded from a preliminary hearing on a homicide charge. The defendant requested that the press and public be excluded. The presiding District Magistrate consented and closed the proceedings. Appellant newspaper petitioned the lower court for an order opening the proceedings and granting access to transcripts.[1] Its petition was denied and the newspaper appeals.

The trial of the criminal case involved has now been concluded and the record of all proceedings has been filed of public record. It is well established that an appeal may be taken from such a closure order even when the proceedings from which the public was excluded are completed, and transcripts made available. A controversy is not moot " 'if the underlying dispute is one 'capable of repetition yet evading review.' ... [because] '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979), *quoting Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) and *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). Those conditions are met in this case.

This case, presenting the question of whether the public and press have a right of access to criminal preliminary hearings independently of the defendant himself, is one of first impression in this court.

---

1. Appellant has also raised the issue of public right to access to records of court proceedings. The records are clearly as public as are the proceedings.

I agree with the majority and would hold that the public and the press have a limited right of access to this adjudicative criminal proceeding which the court below failed to consider. I write this concurring opinion to explain fully my reasoning.

The right is based on the Pennsylvania Constitution and the Constitution of the United States. As to the Pennsylvania Constitution, the right is founded on portions of the Declaration of Rights which is Article One of the Pennsylvania Constitution. Two sections of Article One are implicated: section 11 which refers to open courts and section 7 which refers to free press and examination of public proceedings.[2] As to the United States Constitution, the right is supported by the First Amendment.

The court below recognized a public right of access to a criminal trial but declined to find the same right to a preliminary hearing. I disagree. The history, purposes, and function of the preliminary hearing place that proceeding squarely within the ambit of the criminal adjudicatory process subject to the American judicial tradition of openness.

Press access to preliminary hearings has not been specifically addressed by the Commonwealth's appellate courts or by the Courts in the Third Circuit or the United States Supreme Court.

Both the Pennsylvania and the United States Supreme Courts have thus far recognized a public right of access to criminal trials and to pretrial suppression hearings although not to preliminary hearings. *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Gannett Co., Inc. v. DePasquale; Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980), *cert. denied, Hayes v. Pennsylvania,* 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980); *Philadelphia Newspapers, Inc. v.*

---

**2.** With regard to the complementary role of the defendant's right to a public trial, Pa. Const. Art. 1, sec. 9, see footnote 9 *infra.*

*Jerome,* 478 Pa. 484, 387 A.2d 425 (1978), *appeal dismissed,* 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877. Pennsylvania case law does not provide a clear basis for the conclusion that the public has a right to access to preliminary hearings. Indeed even where it has found existence of a right of access in the context of suppression hearings there has been no agreement as to the foundation for that right. *See Commonwealth v. Hayes; Philadelphia Newspapers, Inc. v. Jerome.* However, recent federal cases decided after the relevant Pennsylvania decisions have sharpened the issue and clarified the federal constitutional rights implicated in the question of access. *Globe Newspaper Co.; U.S. v. Criden, Appeal of Philadelphia Newspapers, Inc.,* 675 F.2d 550 (3rd Cir.1982).

I first examine the role of the preliminary hearing in Pennsylvania.

I. *The role of the preliminary hearing in Pennsylvania as an adjudicative criminal proceeding.*

The preliminary hearing has a common law and statutory rather than a constitutional origin. Its history extends for a period of nearly 500 years in English criminal jurisprudence. *Commonwealth v. Brabham,* 225 Pa.Super. 331, 309 A.2d 824 (1973); *Commonwealth v. O'Brien,* 181 Pa. Super. 382, 124 A.2d 666 (1956), *appeal dismissed, Commonwealth v. Laughlin,* 389 Pa. 109, 132 A.2d 265 (1957), *overruled on other grounds, Commonwealth v. Brabham; Gannett v. DePasquale,* 443 U.S. at 387 n. 17, 99 S.Ct. at 2909 n. 17. Early English laws required judicial review of the charges against an accused person soon after his arrest to protect the public against indiscriminate release of prisoners on bail, and also to protect the accused from being held on evidence that did not adequately support the charge against him.

Pennsylvania first enacted a statute providing for preliminary hearings in 1915. Act of May 14, 1915, P.L. 499, 42

P.S. § 1080 as cited in *Brabham.*[3] Interpreting this statute, the Pennsylvania Supreme Court declared that a preliminary hearing is a "positive legal right" of an accused. *Commonwealth v. Hoffman*, 396 Pa. 491, 497, 152 A.2d 726, 729 (1959). The major changes in Pennsylvania law since 1915 have been to expand the right to a preliminary hearing to categories of crime not included in the original 1915 statute and to defendants already incarcerated. *Commonwealth v. Brabham.*

In contrast to the early English law, the primary purpose of preliminary hearings in the modern view is to prevent unlawful detention. *Commonwealth v. Hailey*, 470 Pa. 488, 368 A.2d 1261 (1977); *United States v. Gray*, 87 F.Supp. 436 (D.Colo.1949). The preliminary hearing involves the question of whether the evidence is legally sufficient to detain the accused and the question of whether the accused is entitled to be at liberty.

The public as well as the defendant has an interest in the preliminary hearing because it is a vital and integral part of the criminal adjudicative process. The public's interest in the proceeding derives from its fundamental interest in the proper administration of justice. As the *Hayes* court stated: "Our strong constitutional requirement of public access to judicial proceedings emphasizes that publicity is 'of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business.'" *Commonwealth v. Hayes*, 489 Pa. at 449, 414 A.2d at 333 (Justice Kauffman, concurring) (*quoting Cox Broadcasting Corp. v. Cohen*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)).

In this appeal the question is raised whether the preliminary hearings take place in "courts" exercising judicial authority. The magistrates, municipal court judges, and district judges who adjudicate preliminary hearings are designated by the Pennsylvania Constitution as part of the

---

**3.** Previously, the Commonwealth relied on adopted English law on this subject, with the same result. *Commonwealth v. O'Brien*, 181 Pa.Super. 382, 124 A.2d 666 (1956).

Commonwealth's "unified judicial system," exercising the "judicial power of the Commonwealth" Pa. Const., Art. 5, sec. 1.[4] The Legislature enacted into law this constitutionally-mandated system in the Judicial Code. 42 Pa.C.S.A. § 301.[5] It is clear that for purposes of press access district justices exercising criminal jurisdiction are "courts". 18 Pa.C.S.A. § 103.[6]

Furthermore, the preliminary hearing is considered a "critical" stage of the criminal process at which a defendant has a right to counsel. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Judicial responsibility and procedure for preliminary hearings are set out in Rules of Criminal Procedure 141 *et seq.* Clearly, the preliminary hearing is a part of the judicial process.[7]

**4.** "The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system." Pa. Const., Art. 5, sec. 1. A similar provision appeared in prior Constitutions; see historical note to Purdon's Pennsylvania Constitution.

**5.** "The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the:
    (1) Supreme Court.
    (2) Superior Court.
    (3) Commonwealth Court.
    (4) Courts of common pleas.
    (5) Community courts.
    (6) Philadelphia Municipal Court.
    (7) Pittsburgh Magistrates Court.
    (8) Traffic Court of Philadelphia.
    (9) District justices.
All courts and district justices and their jurisdiction shall be in this unified judicial system." 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

**6.** "'Court.' Includes (when exercising criminal or quasi-criminal jurisdiction pursuant to 42 Pa.C.S. § 1515 (relating to jurisdiction and venue)) a district justice." 18 Pa.C.S.A. § 103.

**7.** It is irrelevant that some cases declare a preliminary hearing not a "trial" for the purpose of determining whether an accused has been twice put in jeopardy if a second preliminary hearing is held, *Commonwealth v. Flanders*, 247 Pa.Super. 41, 371 A.2d 1316 (1977), over-

Lastly, there are practical reasons which support access of the public to preliminary hearings. In *Commonwealth v. Knight,* 469 Pa. 57, 68, 364 A.2d 902, 908 (1976), the Pennsylvania Supreme Court noted the press can be "helpful in reporting matters to the public generally so that persons having knowledge of the events might voluntarily come forward and testify." This objective surely has application to the preliminary stage of a prosecution.

In the American system the tradition of public access ordinarily applies to every aspect of the criminal adjudicative process. This long standing tradition has been a bulwark of a free society, preventing secret proceedings which, if permitted, could ultimately erode individual rights and seriously undermine democratic principles.

II. *The basis for the public right of access to pretrial criminal proceedings in the Constitution of Pennsylvania*

After careful study of the history and judicial interpretation of the Declaration of Rights (Article One) of the Pennsylvania Constitution, I conclude that the public right of access to criminal proceedings is firmly predicated on two sections of Article One of the Pennsylvania Constitution: section 11 (open courts), and section 7 (free press and examination of public proceedings).

A. *Article 1, Section 11: "open courts"*

The "open courts" provision is part of Article 1, section 11 of the Pennsylvania Constitution. It provides:

Article 1: That the general, great, and essential principles of liberty and free government may be recognized and unalterably established, WE DECLARE THAT

\* \* \* \* \* \*

Section 11: All courts shall be open; and every man, for an injury done him in his lands, goods, person or reputa-

ruled on other grounds, *Commonwealth v. Scott,* 279 Pa.Super. 8, 420 A.2d 717 (1980), or that some courts approve an indictment issued without a prior preliminary hearing. *Commonwealth v. Boyle,* 470 Pa. 343, 368 A.2d 661 (1977). The public interest and rights that are before us in this matter are not diminished by these other characteristics of the preliminary hearing.

tion, shall have a remedy by due process of law, and right and justice administered without sale, denial or delay. This declaration of the availability of courts to the public has no precise counterpart in the federal constitution. It has been part of the Pennsylvania Constitution since 1776, and, in fact, a part of the fundamental law of the colonial Province of Pennsylvania since 1682.[8]

In the phrase "the courts shall be open" the word "open" has two apparent possible meanings. First, it plainly means that the Commonwealth courts are available to all cases recognized as legal injury by modern courts. *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975).

Second, it may also mean that the courts are physically open to the public. Some lower court Pennsylvania cases support such an interpretation. *Commonwealth v. Klinger*, 75 Pa.D. & C.2d 664 (Perry Co., 1976) (defendant cannot exclude the press from a preliminary hearing); *Declamp v. Hover*, 57 Berks 17 (1965) (defendant in a civil negligence action has the right to a public trial). *See also Commonwealth v. Hayes*, (concurring opinions of Justices Kauffman, Larsen, and Flaherty.)

That the first meaning may appear more often suggests that the issue of jurisdictional availability of state courts arises more frequently, but does not foreclose the additional meaning. And, in fact, as one early Pennsylvania case

---

**8.** The language "all courts shall be open" was set forth in the first constitution of Pennsylvania in 1776, in Section the Twenty-sixth of the Frame of Government, which set forth the structure of the Commonwealth government, including the judicial system.

"Courts of sessions, common pleas, and orphans court shall be held quarterly in each city and county; and the legislature shall have the power to establish such other courts as they may judge for the good of the inhabitants of the state. All courts shall be open, and justice shall be impartially administered without corruption or unnecessary delay: All their officers shall be paid an adequate but moderate compensation for their services..."

The open courts phrase is derived from the "Laws Agreed upon in England" drawn up by William Penn in 1682, section 5 of which read: "All courts shall be open, and justice shall neither be sold, denied, or delayed." The provision is today Article 1, section 11. *See* T.R. White, Commentaries on the Constitution of Pennsylvania, (1907) at 159–161.

states, concerning a court officer's refusing an attorney admission to a courtroom, the two meanings share common ground. All who have lawful business with the courts have a right to physical "ingress and egress" and these persons include the public, as well as attorneys, witnesses, and parties, because of their interest "in the public administration of justice." 30 Pittsburgh Reports 362 (1883).

The interpretation of the open courts provision to mean that the courts shall be open to the public was underscored by the Superior Court in *Commonwealth ex rel. Paylor v. Cavell*, 185 Pa.Super. 176, 181–182, 138 A.2d 246, 248–249 (1958) (footnote omitted), *cert. denied*, 358 U.S. 854, 79 S.Ct. 84, 3 L.Ed.2d 888 (1958) [9]:

> The Supreme Court of the United States had occasion to thoroughly discuss the nature and historical background of the right to a public trial in *Re Oliver*, supra, [333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948)]. See, also, *Com. v. Trinkle*, 279 Pa. 564, 568, 124 A. 191; *People v. Jelke*, 308 N.Y. 56, 123 N.E.2d 769. The origin of the guarantee is not clear. "The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the lettre de cachet. All

**9.** *Paylor* concerned a defendant's right to a public trial. Article 1, section 9, of the Constitution of Pennsylvania, paralleling the Sixth Amendment to the U.S. Constitution, provides that "in all criminal prosecutions, the accused hath a right ... to have ... a speedy public trial..." This right is personal to the defendant and may be waived. *Id.*, 185 Pa.Superior at 183, 138 A.2d at 249. While a criminal defendant's own right to a public trial is not, alone, a source of the public's right of access, the reasons for the two rights are intimately intertwined. An interest in the administration of justice in criminal matters is a legitimate concern of all citizens. (Indeed, the prosecution—the "Commonwealth"—acts for the citizens.) The *Paylor* court also cited Article 1, section 11 as a source of the defendant's right to a public trial. *Id.*, 185 Pa.Superior at 180 n. 3, 138 A.2d at 248 n. 3.

Thus, Pennsylvania courts have approved closing portions of criminal trials only when closure was strictly limited to valid purposes and limited in time and scope. *See, e.g. Commonwealth v. Burton,* 459 Pa. 550, 330 A.2d 833 (1974); *Commonwealth v. Trinkle,* 279 Pa. 564, 124 A. 191 (1924); *Commonwealth v. Waiters,* 233 Pa.Super. 83, 334 A.2d 731 (1975).

of these institutions obviously symbolized a menace to liberty." *Re Oliver*, supra, 333 U.S. 257, 268, 269, 68 S.Ct. 499, 505, 92 L.Ed. 682, 691, 692. Public trials became a part of our legal system at the inception of the Colony. William Penn's Code of Laws of 1682, in the Frame of the Government, provided: "Fifth. That all courts shall be open, and justice shall neither be sold, denied or delayed." The Pennsylvania Constitution of 1776 was the first to include the guarantee to an accused of the right to a public trial. "The provisions of the Constitution were no doubt incorporated into that document because of the abuse in early times of an accused's right to a fair trial. This was at a time when a defendant was subjected to a strictly private trial, or star-chamber proceeding, convicted on statements not deserving the name of evidence, ofttimes through the caprice of the ruling monarch. It was determined, when our Constitution was written, this abuse should not be present in our system of jurisprudence. It was thought the presence of the public generally would constrain a court, otherwise predisposed, to accord the witness (sic) a fair trial. Convictions by secret trials were therefore abolished. Public trials, with public records, were introduced, and our Constitution perpetuates this practice; . . ." *Com. v. Trinkle*, supra, 279 Pa. 564, 568, 124 A.2d 191, 192.

B. *Article 1, section 7: Freedom of the press to examine the proceedings of government*

Secondly, the Pennsylvania Constitution explicitly guarantees freedom of the "printing press . . . to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. . ." Pa. Const., art. 1, sec. 7. This provision parallels the First Amendment of the U.S. Constitution. *McMullan v. Wohlegemuth*, 453 Pa. 147, 308 A.2d 888 (1973), *appeal dismissed*, 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 (1974); *Taylor and Selby Appeals*, 412 Pa. 32, 193 A.2d 181 (1963). The Pennsylvania Supreme Court has recognized that "a right to gather news

of some dimensions must exist if the First Amendment is to have realistic vitality." *McMullan,* 453 Pa. at 162, 308 A.2d at 896. Such a right was held to exist although like all aspects of the First Amendment, it is not unlimited and must be balanced against other Constitutional rights.[10]

In the *McMullan* case, the press' right of access to information was balanced against the right of privacy of welfare recipients whose names and addresses were sought by a reporter. *McMullan,* 453 Pa. at 163, 308 A.2d 888. *See also McLaughlin v. PNI,* 465 Pa. 104, 348 A.2d 376 (1975).

While Article 1, sections 11 and 7 lay a foundation for press access. such right is not absolute and must be balanced by other countervailing interests.

III. *Federal Constitutional basis for the public right of access to pretrial criminal proceedings.*

The United States Supreme Court has held that there is a First Amendment right of access by the press to a criminal trial. *Globe Newspaper Co. v. Superior Court for the County of Norfolk; Richmond Newspapers, Inc., v. Virginia.* While access to criminal trials is a right that is not "unambiguously enumerated in the very terms of the Amendment", it is "nonetheless necessary to the enjoyment of other First Amendment rights", including "the free discussion of governmental affairs." *Globe Newspapers,* 457 U.S. at 604, 102 S.Ct. at 2619, 73 L.Ed.2d at 255. Access to criminal trials in particular is protected by the First Amendment because of the historic tradition of such access, and also because of the important role of "public scrutiny" to the "quality" and "integrity" of the criminal

---

10. After noting that the Pennsylvania provision parallels the First Amendment of the U.S. Constitution, the *McMullan* court stated that the U.S. Supreme Court had never ruled on whether "newsgathering" was activity encompassed by the First Amendment. The court then discussed the issue as a "First Amendment" issue. State courts have frequently approached personal rights issues using language of federal law. Recently, however, in a trend that may be helpful in fully developing the meaning of state constitutions, state courts have turned to their own fundamental law independently of federal legal developments. See *Developments in the Law—The Interpretation of State Constitutional Rights,* 95 Harv.L.Rev. 1324 (1982).

adjudicative process. *Globe Newspapers,* 457 U.S. at 605, 606, 102 S.Ct. at 2619, 73 L.Ed.2d at 256.

Although the Court has acknowledged an "independent" "important societal interest" in access to pretrial suppression hearings, it has not ruled that any specific Constitutional provision forms a specific Constitutional guarantee of access in a pretrial context. The Court has ruled that the Sixth Amendment does not provide such a guarantee. *Gannett Co., Inc. v. DePasquale; Richmond Newspapers. Cf. U.S. v. Cianfrani,* 573 F.2d 835 (3rd Cir.1978).

However, the United States Court of Appeals for the Third Circuit in *U.S. v. Criden, Appeal of Philadelphia Newspapers, Inc.* decided that the press was entitled to access to pretrial proceedings on due process issues. It held that in the pretrial context the First Amendment protected the press' right of access.[11] In *Criden,* the federal district judge convened a hearing in chambers on suppression and due process motions concerning the controversial investigative methods used by the government in the political corruption cases known as the Abscam cases. Philadelphia Newspapers, Inc., publisher of the Philadelphia Inquirer and the Philadelphia Daily News, appeared and argued for access to those hearings. The trial court closed the hearings, however, because "the subject of the hearings involved 'matters, the pretrial disclosure of which would inevitably impair or destroy the rights of both the Government and the defendant to a fair trial before an impartial tribunal.'" 675 F.2d at 552. On appeal, the court held that "the public has a first amendment right of access to pretrial suppression, due process, and entrapment hearings." *Id.* at 554. An understanding of the meaning of the First Amendment "interpreted in the light of current values and condi-

11. Where the United States Supreme Court has not spoken definitively on a matter of federal constitutional law, the viewpoint of the Third Circuit Court of Appeals is not binding on Pennsylvania courts. Where it is relied upon it is followed either as a sound judicial practice to avoid confusion, *Commonwealth v. Negri,* 419 Pa. 117, 213 A.2d 670 (1965), or because the reasoning of the federal case is "well-considered" and merits deference, *North Penn Consumer Discount Co. v. Shultz,* 250 Pa.Super. 530, 378 A.2d 1275 (1977).

tions," *id.* at 555, led to this conclusion because of the enormously increased contemporary importance of pretrial proceedings to criminal adjudications. The purpose of the First Amendment is to protect the free exchange of ideas, and therefore access and a right to receive information is an integral part of the amendment's guarantee of freedom of speech.

I believe that the reasoning of *Criden* is persuasive as to the existence of a First Amendment right of access to suppression, due process and entrapment hearings and that this reasoning also applies to a preliminary hearing in Pennsylvania. Access

> ... promotes informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system. *See [Richmond Newspapers]* at 572 (plurality opinion); *id.* at 584 (Stevens, J., concurring); *id.* at 596–96 (Brennan, J., concurring in the judgment) ... serve[s] an important "educative" interest. *See id.* at 572 (plurality opinion) .... gives "the assurance that the proceedings were conducted fairly to all concerned" and promotes the public "perception of fairness." *Id.* at 569, 570 (plurality opinion).... *Id.* at 595 (Brennan, J., concurring ...) has a "significant community therapeutic value" because it provides an "outlet for community concern, hostility, and emotion." *Id.* at 570–71 (plurality opinion) .... serves as a check on corrupt practices by exposing the judicial process to public scrutiny, thus discouraging decisions based on secret bias or partiality. *See id.* at 569 (plurality opinion) .... enhances the performance of all involved. *See id.* at 569 n. 7 (plurality opinion)..... [and] discourages perjury. *See id.* at 596–97 (Brennan, J., concurring in the judgment).

*Criden,* 675 F.2d at 556.

IV. *How to balance the rights of the press and the rights of a defendant when a defendant requests closure of a pretrial criminal proceeding*

A defendant is constitutionally entitled to a fair trial (Sixth Amendment, U.S. Constitution; Pa. Const. Art. 1,

sec. 9; *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). What justification must a defendant show to obtain a closure order and what procedure must be provided to protect the rights of members of the public or of news organizations who object to closure? To answer, one must appreciate the reason the press/court controversies arise. On the one hand the press has an interest and a limited right to report on every phase of the adjudicatory process. On the other hand, the defendant has a right to an impartial jury. Pretrial publicity can, in rare cases, so bias members of the community from which the jury is drawn that it may be difficult to pick an impartial jury.

Since an already assembled jury can, if necessary, be sequestered to prevent exposure to prejudicial publicity, there is minimal need to request closure of the trial itself for this reason. Therefore, most requests for closure of a criminal proceeding to protect the jury's impartiality are made in the pretrial hearing context.[12]

I would hold that a defendant who requests closure must show at least a "serious threat" to his right of a fair trial.[13] *Jerome; Hayes.* "Serious" means "such as to cause considerable distress, anxiety, or inconvenience; attended with danger". Webster's Third New International Dictionary at 2076 (1976). The danger to defendant's fair trial rights should be likely and immediate. This "serious threat" standard was developed in the suppression hearing context in *Hayes* and *Jerome.* In those cases the defendants were concerned about highly inculpatory evidence to which the jury venire might be exposed. The defendants argued that

12. Just under two-thirds of the closure orders requested in the state and federal courts monitored by a journalists' organization were in "pretrial" stages, as opposed to trial, posttrial, or preindictment. Court Watch Summary, The Reporters Committee For Freedom of the Press (Jan. 31, 1981).

13. I note that Justice Kauffman in his concurring opinion in *Hayes* suggested that a criminal defendant who wishes to close pretrial proceedings must show, *inter alia,* "that there is a substantial probability that irreparable damage to his fair trial right will result from conducting the proceeding in public." *Id.* 489 Pa. at 451, 414 A.2d at 334.

jurors aware of this evidence could not act impartially in the event that such evidence was suppressed.

The American Bar Association proposal on access to pretrial proceedings provides another formulation of this standard framed in language different from that of the Pennsylvania Supreme Court. The ABA recommends that pretrial proceedings be open to the public and closed only if the dissemination of information from such proceeding would create a "clear and present danger" to fair trial rights. American Bar Association Standards Relating to the Administration of Justice: Fair Trial and Free Press, Standard 8–3.2 (2d Ed. 1980) ("ABA Standards").

Once a court finds that publicity resulting from a preliminary hearing may potentially present a serious threat to a fair trial, the judge shall take the following steps before closing the preliminary hearing:

First, he shall consider alternative means to protect the fair trial rights of the defendant. If a means other than closure is available which will effectively and practically prevent the expected prejudice to defendant, it must be preferred.[14] *Commonwealth v. Hayes; Philadelphia Newspapers Inc. v. Jerome; U.S. v. Criden;* ABA Standards.

Second, before a preliminary hearing can be closed to the public, closure must be found likely to be effective in preventing the prejudicial pretrial publicity that is feared. Thus, if the prejudicial evidence sought to be kept from the public has already become known, closure might not be justified. *Commonwealth v. Hayes* (Kauffman, J., concurring).

Third, the reasons for closure, reviewing the substantive factors discussed above and the alternatives considered must be articulated by the court for record. *Common-*

---

**14.** Pa.R.Crim.P. 326 provides guidance as to available alternatives at trial which may also be applicable in the pretrial context.

A court should also bear in mind that if pretrial publicity should ultimately prove sufficiently prejudicial, change of venue of the trial may provide a sufficient remedy.

*wealth v. Hayes* (Kauffman, J., concurring); *U.S. v. Criden.*

## Conclusion

For all these reasons, I would specifically hold that news organizations and the public have a constitutional right to attend criminal preliminary hearings. The right is founded upon the Pennsylvania Constitution, Article 1, section 7, establishing the right of a free press to examine public proceedings, and section 11, declaring that all courts shall be open. The right is further supported by the First Amendment to the United States Constitution.

American courts have an outstanding tradition of openness to the public.[15] Only in recent years has their record been matched by other branches of government that have enacted or adopted "sunshine" or "right to know" or "freedom of information" laws opening other governmental activity to the enquiring public. This growing American tradition in which governmental power is exercised openly and subjected to critical inspection is one of which we can justly be proud. We are all too familiar with the results of unchecked authoritarian power of governments over their citizens without such a tradition.

Professional information-gatherers play a crucial role in keeping the public informed in our complex society. "The press is the necessary representative of the public's interest in this context and the instrumentality which effects the public's right." *Saxbe v. Washington Post Co.*, 417 U.S. 843, 864, 94 S.Ct. 2811, 2822, 41 L.Ed.2d 514 (1974) (Powell, J., dissenting), *quoted approvingly in Herbert v. Lando*, 441 U.S. 153, 189, 99 S.Ct. 1635, 1655, 60 L.Ed.2d 115 (1979) (Brennan, J., dissenting). This role of the press has been explicitly protected in Pennsylvania since its earliest Constitution declared that "the printing press shall be free to every person who may undertake to examine the proceed-

---

**15.** See cases and materials collected in Wilder, *All courts shall be open: The Public's Right to View Judicial Proceedings and Records,* 52 Temple L.Q. 311 (1979).

ings of ... any branch of government." Pa. Const. Art. 1, sec. 7.

In light of the importance of this tradition, a request to close a judicial proceeding to the public or press should be granted only with the gravest of reservations.