**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH M. TRIFIRO | |
| Appellant | No. 1763 WDA 2013 |

Appeal from the Judgment of Sentence entered August 29, 2013
In the Court of Common Pleas of Fayette County
Criminal Division at No: CP-26-CR-0000466-2012

BEFORE:  GANTMAN, P.J., ALLEN, and STABILE, JJ.

CONCURRING AND DISSENTING MEMORANDUM BY STABILE, J.:

**FILED OCTOBER 10, 2014**

The Majority holds that Appellant's Ohio conviction for gross sexual imposition properly was admitted as evidence of a common scheme to commit the sex offenses charged in this case.  To reach this result, the Majority seizes on general, non-specific similarities between the Ohio conviction and this case to justify finding a common scheme, plan or design to admit this evidence as an exception to Pennsylvania Rule of Evidence 404(b)(1). Because the record reflects the Ohio conviction was introduced solely to prove Appellant's criminal propensities in violation of Rule 404(b)(1), I respectfully dissent.[1]

_____

[1] I concur in the Majority's rejection of Appellant's sufficiency of the evidence claim.  I find it necessary to reach that claim even though I believe a new
*(Footnote Continued Next Page)*

J-S27040-14

Pennsylvania Rule of Evidence 404(b) provides:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).[2]

The common law has long prohibited the use of prior bad acts to prove a defendant's guilt. *See Shaffner v. Commonwealth*, 72 Pa. 60, 65 (1872) ("It is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely he would commit another."). The purpose of what is now Rule 404(b):

*(Footnote Continued)* —————————

trial is necessary, because where insufficient evidence supports a conviction, double jeopardy bars retrial. *See, e.g., Commonwealth v. Markman*, 916 A.2d 586, 598-99 (Pa. 2007) (addressing the sufficiency of the evidence even though a new trial was warranted).

[2] Our Supreme Court rescinded and replaced the Pennsylvania Rules of Evidence, effective March 18, 2013. Thus, the current, restyled version was in effect at Appellant's trial on April 4, 5, and 8, 2013.

is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more liable to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

*Commonwealth v. Trowery*, 235 A.2d 171, 172 (Pa. Super. 1967).

Rule 404(b)(2) contains a non-exhaustive list of exceptions to the general rule prohibiting introduction of uncharged acts for purposes other than showing a defendant's propensity to commit crime. *See* Pa.R.E. 404 *Comment*; *Commonwealth v. Brown*, 52 A.3d 320, 325-36 (Pa. Super. 2012). The exceptions are as old as the rule. *See Commonwealth v. Ferrigan*, 44 Pa. 386, 387-88 (1863) (holding evidence of adultery—then a crime—between a man and his mistress was admissible to show motive and intent to murder the latter's husband). However, "the exceptions cannot be stretched in ways that effectively eradicate the rule." *Commonwealth v. Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*).

The exception utilized in this case is the common scheme, plan, or design exception.[3] "Under Pennsylvania law, evidence of prior bad acts is

_____

[3] The trial court purported to admit the Ohio conviction as evidence of "common motive." "To be admissible [as evidence of motive], there must be a specific 'logical connection' between the other act and the crime at issue which establishes that 'the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'" *Ross*, 57 A.3d at 100 (quoting *Commonwealth v. Martin*, 387 A.2d 835, 838 (Pa. 1978)). I agree that the admission of the Ohio conviction cannot be sustained as proof of motive. Moreover, a "common motive" to engage in
*(Footnote Continued Next Page)*

admissible to prove a common scheme, plan or design **where the crimes are so related that proof of one tends to prove the others**." *Id.* at 103 (emphasis added) (internal quotation omitted). The prior bad acts must be

> so nearly identical in method as to earmark them as the handiwork of the accused. Here, **much more is demanded than the mere repeated commission of crimes of the same class**, such as repeated burglaries or thefts. **The device used must be so unusual and distinctive as to be like a signature**.

*Id.* (quoting ***Commonwealth v. Shivley***, 424 A.2d 1257, 1259 (Pa. 1981)) (emphasis in original); ***see also Commonwealth v. Einhorn***, 911 A.2d 960, 967 (Pa. Super. 2006) ("The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception."). Factors to establish similarity include "the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." ***Commonwealth v. Cain***, 29 A.3d 3, 7 (Pa. Super. 2011) (internal quotation omitted). "Furthermore, the importance of the intervening time period is inversely proportional to the similarity of the crimes in question." ***Einhorn***, 911 A.2d at 967 (internal quotation omitted).

_____
*(Footnote Continued)*

criminal activity is not an exception to Rule 404(b)(1). Such an exception would swallow the Rule.

In this case, the Majority holds that "the record does support the admission of Appellant's Ohio conviction as prior bad act evidence of Appellant's scheme and plan . . . ." Majority Memorandum, at 9. In support, the Court cites *Commonwealth v. Aikens*, 990 A.2d 1181 (Pa. Super. 2010). *Aikens*, however, does not support admission of Appellant's Ohio conviction in this case.

In *Aikens*, we held that the trial court properly admitted evidence that Aikens had sexually abused his biological daughter, V.B., as proof of his common scheme, plan, or design to abuse a second biological daughter, T.S. The "fact pattern involved in the two incidents was markedly similar." *Id.* at 1185-86. The victims were the same age at the time of the abuse (V.B was 14 and T.S. was 15). *Id.* at 1182-83, 1185-86. Aikens initiated the sexual abuse while the victims were staying in his apartment; he showed pornographic movies to the victims, the assaults occurred at night in Aikens' bed, and the defendant mimicked sexual intercourse to gratify himself. *Id.* at 1185-86. We found that "[t]hese matching characteristics elevate the incidents into a **unique pattern that distinguishes them from a typical or routine child-abuse factual pattern**." *Id.* at 1186 (emphasis added). As I explain *infra*, no such unique pattern exists here to connect the Ohio conviction and this case from any other child-abuse cases.

I find substantial support in other of our cases for excluding the Ohio conviction here under Rule 404(b)(1) (and before it, the common law). For example, in *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987-88 (Pa.

Super. 2007), we affirmed the admission of the defendant's convictions of sexually abusing a child under the common scheme exception to Rule 404(b)(1). In *G.D.M.*, the timeframe between two incidents was very close, both molestations occurred in the family home, both involved the defendant's biological children, and both involved manipulation of victims' genitals by hand only. *Id.*

In *Commonwealth v. O'Brien*, 836 A.2d 966, 971-72 (Pa. Super. 2003), we held that the trial court erred in refusing to admit prior convictions of sexual abuse under the common scheme exception. In *O'Brien*, both incidents involved boys of the same age and the defendant was a family friend of the victims. *Id.* The defendant assaulted the victims while alone with them in their homes, groomed them with pornography, and forced his penis into their mouths. *Id.* We held that the prior conviction was sufficiently similar to the charges to constitute a "signature" crime based on their shared similarities and the prior incident was not too remote in time to be inadmissible. *Id.*

Finally, on direct review in *Commonwealth v. Hughes*, 555 A.2d 1264, 1282 (Pa. 1989), our Supreme Court approved the admission of the defendant's rape of one girl (Ms. Oquendo) to prove that he raped and murdered another (Ms. Graham).

> A comparison of the two crimes, gleaned from Ms. Oquendo's testimony and [a]ppellant's confessions, yields the following similarities: (1) both crimes involved young females (Graham was nine; Oquendo was twelve); (2) both victims were non-Caucasian (Graham was [African-American]; Oquendo was

Puerto Rican); (3) both crimes occurred during the daytime; (4) both crimes took place within a four-block radius; (5) both crimes took place within a five-minute walk from [a]ppellant's home; (6) both crimes involved circumstances in which the victim was lured or strong-armed off the street; (7) both victims were taken to upstairs bedrooms of vacant buildings; (8) in both crimes the assailant ordered the victims to undress; (9) both crimes involved rape, other sex acts (Graham was anally; Oquendo was orally), and manual strangulation; and (10) both crimes involved circumstances in which the accused and the victims previously were acquainted.

***Id.***[4]

In contrast, this Court *en banc* in **Ross** reversed a first-degree murder conviction because the trial court, among other errors, improperly admitted evidence of the defendant's past violent abuse of women as proof of a common scheme to rape and murder the victim. **Ross**, 85 A.3d at 103-04. We held that evidence of the prior assaults failed to "establish a pattern of conduct on Ross' part so distinctive that "proof of one tends to prove the others." ***Id.*** at 104 (internal quotation). Rather, the prior acts showed merely that Ross serially abused his paramours, and "did not show a unique 'signature' *modus operandi* relevant to [the victim's] murder." ***Id.***

In this case, the Majority finds that the following factors evince a common scheme supporting admissibility of Appellant' Ohio conviction:

---

[4] Hughes' rape and murder of Graham actually predated his assault and rape of Oquendo. Rule 404(b), however, allows the admission of subsequent, as well as prior acts. ***See, e.g., Commonwealth v. Weakley***, 972 A.2d 1182 (Pa. Super. 2009) (holding evidence of a robbery committed after the offenses charged was admissible to prove identity).

- The offenses occurred at a "similar time of year," *i.e.*, October 6, 2001 and September 20-22, 2011;

- The victims were prepubescent children aged eight in the Ohio conviction, and six and four in this case;

- Both the Ohio conviction and this case involved "sexual contact with children;"

- None of the victims was Appellant's spouse; and

- The Ohio conviction required proof of force or threat of force, and in this case Appellant confessed to his cellmate that he abused the victims because he liked the feeling of power over them.

*See* Majority Memorandum, at 10. Respectfully, unlike a signature crime, I find that these facts are so general that they very well could be present in every case in which a defendant is charged with sexually abusing a child. Some are so general they could apply in virtually every sexual assault case. Simply put, the Majority's factors fail to demonstrate the circumstances surrounding Appellant's Ohio conviction are sufficiently similar to the facts of the offenses committed in this case to support admissibility under Rule 404(b)(2).

The first factor found by the Majority, that the offenses were committed at a similar time of year, is an abstract fact that proves nothing. No evidence of record exists as to why Appellant committed the offenses in September and October. The timing could be pure coincidence, and the Commonwealth presented no evidence as to how the commission of the crimes at the same time of year tended to prove a signature *modus operandi*.

Under the second factor, the Majority posits that the victim in the Ohio conviction and the victims here are all prepubescent children, aged eight, six, and four. That is not a unique fact. Rather, it is common to **all** sexual assaults of children, defined by the Crimes Code as those under 13 years of age. **See, e.g.**, 18 Pa.C.S.A. § 3125(b).

As to the third factor, the Majority points to the elements of the Ohio conviction as evidence of similarity. The Court states the two offenses are similar because they involved "sexual contact with children." Majority Memorandum, at 10. That element is common to **all** sexual assaults of children. It is the *actus reus* of the offense. The Majority cites no authority in which we ever found facts so general as these to permit admission of common scheme evidence. Under the common scheme exception, it is the similarity between the other acts and the facts surrounding the crimes charged—not the mere fact that the two incidents occurred—which makes the prior act evidence of a common scheme. **See Aikens**, 990 A.2d at 1185-86 (defendant mimicked of sexual intercourse); **G.D.M., Sr.**, 926 A.2d at 987-88 (defendant forced victims to manipulate his genitals by hand); **O'Brien**, 836 A.2d at 971-72 (defendant forced victims to perform oral sex on him); **see also Hughes**, 55 A.2d at 1282 (both crimes involved forcible vaginal sexual intercourse, involuntary deviate sexual intercourse, and manual strangulation).

As to the fourth factor, the Majority notes that none of Appellant's victims were his spouse. To use Appellant's marital relationship to the

victims as evidence of similarity is imprudent. All sexual assaults of children involve perpetrators not married to their victims, since, *inter alia,* children cannot marry.[5] **See** 23 Pa.C.S.A. § 1304(b)(1) (children under 16 require court approval to marry); Ohio R.C. § 3101.01 (males under 18 and females under 16 cannot marry).

Finally, addressing the fifth factor, the instant offenses did not require proof of force—unlike the Ohio conviction. To the extent Appellant committed the current offenses motivated by a feeling of power over the victims, that fact is not sufficiently unique to constitute evidence of similarity, absent some factual nexus between the prior bad act and the offense charged. **See Commonwealth v. Seiders**, 614 A.2d 689, 692 (Pa. 1992) (holding that prior sexual assault of a child was not admissible as proof of defendant's motive to seek sexual gratification by assaulting

_____

[5] The Ohio conviction required proof that the victim was not Appellant's spouse only because Ohio still retains spousal immunity to the crime of gross sexual imposition as charged against Appellant. Ohio R.C. §§ 2907.01(L), 2907.05(A)(1); *see* Michelle J. Anderson, *Marital Immunity, Intimate Relationships, and Improper Inferences: A New Law on Sexual Offenses by Intimates*, 54 HASTINGS L.J. 1465, 1469-70 & n.9 (2003) (noting that Ohio retains partial spousal immunity for the crime of gross sexual imposition).

Appellant could have been charged with gross sexual imposition under Ohio R.C. § 2907.05(B), which prohibits touching the genitalia of a person under 12 with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. Spousal immunity is not a defense to a violation of § 2907.05(B).

children, because requisite causal connection between two offenses was lacking).

In addition, the Majority does not account for record facts that establish significant differences between the two offenses, which vitiate evidence of a common scheme:

- A **decade** passed between the Ohio offense and the offenses in this case;

- For the Ohio offense, Appellant admitted to sexual contact, *i.e.*, indecent contact,[6] with the victim. This case required proof of aggravated indecent assault and included evidence of involuntary deviate sexual intercourse;

- Appellant committed the current offenses in the apartment of the victims' parents in Masontown, Pennsylvania. We do not know where or under what circumstances he committed the Ohio offense, except that it occurred in Cuyahoga County, Ohio;

- The offenses in this case occurred while the victims were in bed and possibly asleep. No evidence of record exists regarding the factual circumstances giving rise to the Ohio conviction;

- Appellant was a juvenile when he committed the Ohio offense. He was an adult in this case;

- The Ohio offense involved one victim. This case involved two victims;

- The victim of the Ohio offense was male. The victims in this case are female; and

---

[6] Ohio law defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. Ohio R.C. § 2907.01(B); *cf.* 18 Pa.C.S.A. § 3101 (defining indecent contact).

- The victim of the Ohio offense was Appellant's relative. Appellant is unrelated to the victims in this case.

While these differences largely speak for themselves, I wish to provide additional comment on two; the intervening time and the manner by which the crimes were committed.

Common scheme evidence can include a large time lapse, but only where the prior act is extremely similar to the current offense, because lapse in time and similarity are inversely proportional. *See Aikens*, 990 A.2d at 1186 (finding that probative value of striking parallels between two offenses outweighed time between offenses). Here, ten years passed between the incident giving rise to the Ohio conviction and the assaults in this case. The Majority fails to explain how the facts they find in common between the Ohio conviction and here cancel out the significant time difference between them.

Finding any similarity in the manner by which the crimes were committed in Ohio and the crimes charged here is quite problematic. No record evidence exists to show similarity in the manner of committing the offenses charged here and those in Ohio. *Cf. Aikens*, *supra* (offenses occurred in defendant's bedroom in his apartment); *G.D.M., Sr.*, *supra* ("Both molestations occurred in the family home[.]"); *O'Brien*, *supra*, (offenses occurred inside defendant's home, and often, his bedroom); *cf. also Hughes*, *supra* ("[B]oth crimes took place within a four-block radius[.]"). The record reveals no details regarding where Appellant committed the Ohio offense (in his house, in the victim's house, the time of day, the way in which Appellant was able to isolate the victim, etc.), except

- 12 -

that it occurred in or near Cleveland. No doubt, this is so because only the certified record of the Ohio conviction was introduced at trial to support the common scheme exception. In contrast, the offenses in this case occurred in Masontown, Pennsylvania, in the apartment the victims' parents were vacating, at night, and while the victims were in bed and possibly asleep.

I find the Commonwealth's argument suffers from much of the same infirmity as the rationale expressed by the Majority. The Commonwealth states that the Ohio conviction "showed that Appellant had a sexual predilection toward young children as well as a penchant for force and control consistent with the testimony of Commonwealth witnesses." Appellee's Brief at 4. Its argument is exactly what Rule 404(b)(1) prohibits: use of prior bad acts to prove Appellant's character to show that he acted in accordance with that character in committing the offenses charged here.

In sum, any similarities between the Ohio conviction and this case fall woefully short of proof of a common scheme, plan or design. Indeed, the Ohio conviction and this case are similar only in the abstract, in that both involved sexual abuse of prepubescent children. The victims were not the same gender, same age, or same relation to Appellant. The sexual contact between Appellant and the victims was not the same. The factual predicate surrounding the offenses was not the same. The Commonwealth presented evidence of similarity only at the most basic level—a "sexual predilection toward young children." In my opinion, admission of the Ohio conviction was a clear violation of Rule 404(b)(1).

Because the Ohio conviction was inadmissible under Rule 404(b)(1), unlike the Majority, I would not reach the issue of whether its probative value outweighed any prejudicial effect under Rule 404(b)(3). **See Ross**, 57 A.3d at 104 n.18. Nonetheless, I find it necessary to comment on the Majority's opinion that the trial court's jury charge weighed against any prejudice regarding the Ohio conviction. Citing **Commonwealth v. Spotz**, 756 A.2d 1139, 1153 (Pa. 2000), the Majority concludes the trial court's limiting instruction weighs against a finding of prejudice. Majority Memorandum, at 10-11. The Majority fails to quote the entire instruction, which likely **increased** prejudice to the Appellant:

> Now, you have heard evidence tending to prove that the defendant was guilty of gross sexual imposition upon an 8-year-old boy, with an offense date of October 6th of 2001. **This evidence is before you for a limited purpose, that is, as circumstantial evidence for the purpose of tending to show the presence of a motive to engage in sexual contact with a child**. This evidence must not be considered by you in any other was other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. You may only consider this as evidence of motive to the extent that it helps the Commonwealth to prove its case.

N.T. Trial, 4/4, 5, 8/13, at 281 (emphasis added). In other words, the trial court told the jury it could use the Ohio conviction as proof that Appellant had a motive to sexually abuse children. At best, the instruction is confusingly self-contradictory in that the trial court also informed the jury that it could not use the Ohio conviction as evidence of bad character or

criminal tendencies.[7] At worst, the instruction utterly fails to conform to the law by informing the jury that it could use the Ohio conviction as proof of his guilt in this case.

I further find that the error in admitting evidence of Appellant's Ohio conviction was not harmless.[8] "Evidence of prior criminal activity . . . is probably only equaled by a confession in its prejudicial impact upon a jury." *Commonwealth v. Spruill*, 391 A.2d 1048, 1050 (Pa. 1978). "The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Trowery*, 235 A.2d at 172. Indeed, evidence of other crimes is so prejudicial that a testifying defendant cannot be questioned about prior convictions except in limited circumstances, even if those convictions are properly admissible. 42 Pa.C.S.A. § 5918; *Commonwealth v. Garcia*, 712 A.2d 746, 748-49 (Pa. 1998) (reversing a murder conviction where testifying defendant was cross-examined on his prior convictions of crimes of falsehood).

_____

[7] The trial court did not explain under which circumstances "the presence of a motive to engage in sexual contact with a child" would **not** be evidence of bad character or criminal tendencies.

[8] *See Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (defining harmless error and noting an appellate court may raise it *sua sponte*).

Rule 404(b)(1) explicitly prohibits introduction of evidence of prior bad acts for the purpose of showing that the defendant has a generalized motive to commit a crime—here the motive to sexually abuse children. For that reason, Rule 404(b)(2) requires "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the **crime in question**," *Ross*, 57 A.3d at 105 (emphasis added), *i.e.*, the crime for which the defendant is on trial. Here, the record fails to support a "unique fact pattern" that connects this and the Ohio conviction from other child-abuse cases. *Aikens*, 990 A.2d at 1186. My review of the record indicates that Appellant's Ohio conviction was used solely to show that he sexually abuses children so that the improper inference could be drawn that he committed the sexual assaults charged in this case.

The Majority allows Appellant's conviction to stand despite the highly prejudicial use of his prior conviction to infer guilt. Appellant was charged with the despicable crimes of sexually abusing small children. Infamy of the charges, however, is an insufficient reason to disregard the Rules of Evidence. Appellant's Ohio conviction is not evidence of a common scheme, and it should not have been introduced into evidence at his trial. I would vacate the judgment of sentence and remand for a new trial.[9] Therefore, I respectfully dissent.

_____

[9] I would not reach the remaining issues raised by Appellant. Nonetheless, I believe the Majority has applied the wrong standard of review to Appellant's

*(Footnote Continued Next Page)*

challenge to his sentence. The Majority purports to review the trial court's decision for an abuse of discretion. Majority Memorandum, at 4. Appellant, however, challenges the application of a mandatory minimum sentence, 42 Pa.C.S.A. § 9718.2, as grossly disproportionate and, therefore, unconstitutional. "[A]n appellant who challenges the constitutionality of his sentence of imprisonment on a claim that it violates his right to be free from cruel and unusual punishment raises a legality of the sentencing claim." **Commonwealth v. Yasipour**, 957 A.2d 734, 740 n.3 (Pa. Super. 2008) (internal quotation omitted). "When the legality of a sentence is at issue on appeal, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Catt**, 994 A.2d 1158, 1160 (Pa. Super. 2010) (*en banc*); **see also Commonwealth v. Baker**, 78 A.3d 1044, 1047-49 & n.3 (Pa. 2013) (reviewing *de novo* and rejecting a constitutional challenge to § 9718.2). Moreover, application of § 9718.2 to Appellant was mandated by statute, and thus not within the trial court's discretion. **See, e.g.**, **Commonwealth v. Wisor**, 928 A.2d 270, 273 n.6 (Pa. Super. 2007). Finally, I note that **Baker**, 78 A.3d at 1045 (holding that application of § 9718.2 to second conviction of possessing child pornography was not cruel and unusual punishment), completely forecloses Appellant's argument.